**OBERHOLTZER v. MYLES et al.**

No. 5240.

Court of Civil Appeals of Texas. Amarillo.

Jan. 6, 1941.

Rehearing Denied Feb. 10, 1941.

Lawrence L. Barber, of Seagraves, Vickers & Campbell, of Lubbock, and Stubbeman, McRea & Sealy, of Midland, for appellant.

W. E. Lessing, of Abilene, for appellees Daisy Lee Myles, James H. Myles, Jodie Pinkston, J. D. Pinkston, Bobbie Thorp, Ewing Thorp, Annie Williams, Cecil Vernon Corder, Clarence Emory Corder, Charles Erwin Corder, Nora Mae Jutson, and Bobbie Judson.

Letcher D. King and Kirby, King & Overshiner, of Abilene, for appellees, Nora Mae Jutson, Bobbie Judson, Clarence E. Corder, and Cecil V. Corder.

Laurel M. Dunn, of Abilene, for appellees Nora Mae Jutson, Bobbie Judson, Cecil Vernon Corder, Clarence Emory Corder, and Charles Erwin Corder.

JACKSON, Chief Justice.

The record shows that R. B. Corder and Eliza A. Corder were husband and wife and acquired Section 36–B in Block AX, Public School Land, containing 388 acres, originally located in Gaines but by a change of the boundary line between Gaines and Yoakum Counties the land is now situated entirely in Yoakum. Mrs. Corder died on October 21, 1935, and left surviving her her husband, R. B. Corder, and their eight children, Daisy Lee Corder, who married James H. Myles, Jodie Corder, who married J. D. Pinkston, Annie Corder, who married L. R. Williams, Bobbie Corder, who married Ewing Thorp, Nora Mae Corder, who married Bobbie Judson, Cecil Vernon Corder, Clarence Emory Corder and Charles Erwin Corder.

R. B. Corder was appointed and duly qualified as community administrator of the community estate of himself and his deceased wife.

On May 14, 1938, five of the children instituted suit in the District Court of Yoakum County to partition said Section 36–B among all the children who they alleged each owned an undivided 1/16 interest, R. B. Corder an undivided 1/2 interest and that certain other defendants, among whom was R. V. Oberholtzer, were claiming some interest in the minerals.

Later the children and R. B. Corder were, as there was no controversy between any of them, allowed on their motion to proceed as co-plaintiffs and change the style of the cause to Daisy Lee Myles et al. vs. R. V. Oberholtzer. The other parties named as defendants in the original partition suit were dismissed therefrom, and the children and R. B. Corder, hereafter called appellees, changed the suit to an action in trespass to try title against R. V. Oberholtzer, the appellant, to recover title and possession to an undivided one-half interest in the oil, gas and other minerals on said Section No. 36–B.

In their third amended original petition the appellees, in addition to the action in

trespass to try title, in reply to the cross-action of appellant, pleaded a general denial, not guilty, denied under oath that R. B. Corder had executed and delivered the purported deed to R. V. Oberholtzer under which he claimed. They alleged that R. B. Corder was qualified as community survivor of the estate of himself and his deceased wife, and that about January 1, 1937, he relinquished to the children their one-half interest in the estate, including Section 36–B; that about April 1, 1937, R. B. Corder arranged with R. W. Pittman, who resides at Seminole, Texas, a real estate broker, to procure a purchaser for a one-half undivided interest in the oil, gas and minerals on said section of land; that thereafter on April 9th R. B. Corder executed a deed in blank omitting the name of the grantee and left it with R. W. Pittman who agreed to notify Corder if a prospective purchaser was found and if such purchaser and the price for the royalty were satisfactory Corder would authorize Pittman to insert in the deed the name of the purchaser, collect the consideration and deliver the deed but the deed was not to be delivered until authorized by R. B. Corder; that on April 27, 1937, R. B. Corder advised R. W. Pittman to discontinue his efforts to procure a purchaser; that on the 26th of April Pittman and the appellant entered into a conspiracy to obtain one-half of the minerals on said section and R. W. Pittman without authority and without consulting R. B. Corder inserted in the deed the name of R. V. Oberholtzer as grantee, had the deed placed on record and mailed to R. B. Corder a check for $1,868.20 as the purchase price; that he promptly went to Seminole, Texas, and tendered the check to Mr. Pittman who declined to accept it; all of which was done by Pittman and Oberholtzer for the purpose and with the intention of defrauding the children out of the estate of their deceased mother.

The appellees prayed that the defendant take nothing by his cross-action; that the deed to him be cancelled and they be adjudged title and possession to the land and minerals.

The appellant answered by general demurrer, general denial, plea of not guilty, alleged that R. B. Corder was the duly qualified and acting community survivor of the estate of himself and his deceased wife; that on April 1st he listed with R. W. Pittman, a real estate broker, for sale an un-divided one-half interest in the royalty on said section and authorized him to sell it to any purchaser who would pay the consideration therefor which was to be not less than $10 per acre to R. B. Corder; that R. W. Pittman contacted the appellant almost immediately who agreed to purchase the royalty and pay therefor $11 per acre; that thereafter on the 9th of April R. B. Corder, individually and as community survivor of the estate of himself and his deceased wife, executed the deed sought to be cancelled and the name of the purchaser, R. V. Oberholtzer, was written therein; that it was agreed that the purchaser should be furnished an abstract and given time to have the title approved or rejected by his attorney at which time Pittman was authorized to deliver the deed to Oberholtzer upon the payment of the consideration. The abstract was furnished, the title approved and on April 26th the grantee paid $2,134 to R. W. Pittman who paid $1,868.20 to R. B. Corder who accepted said amount as the consideration due on the sale and neither he nor any of the appellees have ever tendered to appellant any part of the purchase money so paid; that R. B. Corder has ratified the conveyance and appellees are estopped from questioning the title of appellant who purchased the property in good faith for a valuable consideration. He prayed judgment for title and possession to an undivided one-half interest in the oil, gas and minerals on said land.

On special issues submitted by the court the jury found in effect that the name of R. V. Oberholtzer did not appear as grantee in the mineral deed of date of April 9, 1937, when it was executed and acknowledged by R. B. Corder before A. L. Duff; that R. B. Corder did not know at that time that R. W. Pittman had obtained R. V. Oberholtzer as a purchaser for one-half of the minerals; that R. B. Corder did not authorize the delivery of the deed to R. V. Oberholtzer upon the payment of $10 per acre net; that R. W. Pittman received a telegram from R. B. Corder requesting that all papers be returned to him prior to the time Pittman delivered the deed and received payment from R. V. Oberholtzer; that R. W. Pittman was agent for R. B. Corder for the sale of one-half of the royalty on Section 36–B; that Pittman was to advise Corder by mail or telegram of such offers as he might receive for the royalty and the name of the purchaser thereof before the deed was delivered.

On these findings the court rendered judgment that appellees have and recover of and from the appellant an undivided one-half interest in the royalty on said Section 36–B; that the deed be cancelled, annulled and held for naught; that the cloud be removed from the title and that appellant take nothing by his cross-action, from which judgment this appeal is prosecuted.

The appellant challenges as error the action of the trial court in refusing at his request to peremptorily direct a verdict in his behalf because he contends the undisputed testimony entitles him to a judgment for an undivided one-half interest in the minerals in and to said Section 36–B.

Mr. R. B. Corder testified in substance that he listed the oil, gas and minerals, which we will call royalty, for sale with R. W. Pittman, a real estate broker who resides at Seminole, Texas, about April 1, 1937, at $10 per acre net and agreed that the broker should have a commission; that on the 9th of April he was again in Seminole where Mr. Pittman lived and in order to consummate a sale quickly should a purchaser be found he executed a deed, leaving the name of the grantee blank, and the deed was placed with Mr. Duff to be held until a satisfactory purchaser was found who would pay the consideration when Mr. Pittman was authorized to have an abstract completed and furnish it to the purchaser for examination, notify the witness and the sale would be closed; that he had known Mr. Pittman three or four years; that Mr. Duff prepared the deed but witness did not read it and took the word of Mr. Pittman and Mr. Duff to the effect that it was a mineral deed; that he did not know whether an "undivided one-fourth interest or an undivided one-half interest was described;" that he did not know whether the words, "Ten and no/100 Dollars" or the word, "Yoakum," or "All of Section 36–B in Block 6, Public School Lands" or that the language, "I, R. B. Corder, acting for myself and as community administrator" were in the deed or any other statement contained therein but he testified that he did know that the name, R. V. Oberholtzer, grantee, was not in the conveyance when he signed it. He testified that he sold an undivided one-fourth interest to Mr. Cone on April 14, 1937, and another undivided one-fourth interest to Mr. Lowe on April 27th, and on that day wired Mr. Pittman from Abilene, Texas, to proceed no further with the sale of the royalty; that in reply he received a wire from Mr. Pittman at Abilene which stated as follows:

"Received at 140 Cypress St., Abilene, Texas.

"SWN 19 15—Seminole Tex 27 153P—1937 Apr 27 PM 2 01

"R. B. Corder

"Ans Date Abilene Tex

"Retel your royalty paid off yesterday by Oberholtzer

"I mailed you check to Avoca yesterday
                        "R. W. Pittman."

When he arrived home near Avoca on the evening of the 27th, he says he found a letter from Mr. Pittman dated April 26, 1937, enclosing a check for $1,868.20 which was the balance due at $10 per acre less the expenses of the abstract and recording fees and $20 of borrowed money; that this was the first time he was ever advised that Mr. Oberholtzer was the purchaser of this royalty and the next day, April 28th, he went to Seminole and tendered the check to Mr. Pittman who declined and refused to accept it; that he thereafter took the check to the bank, deposited it, used the money and has never paid or offered to pay any part of said sum to either Mr. Pittman or the appellant.

Mr. Pittman testified that the deed was drawn by Mr. Duff, acknowledged before him by Mr. Corder on April 9, 1937; that the name of Oberholtzer was at the time written as the grantee in the deed which was left with Mr. Duff, all of which Mr. Corder knew; that it was understood also that Pittman was to procure an abstract of title and furnish to Mr. Oberholtzer so he could secure the opinion of his attorney thereon and when approved he was to collect the consideration, deduct the expenses, deliver the deed and forward to Mr. Corder the balance due him on the purchase price.

The community administration on the estate of Eliza A. Corder was granted in Jones County, Texas, and in order to abstract the title to this royalty situated in Yoakum County, Texas, it was necessary to secure and have recorded in Yoakum County a copy of such proceedings. The clerk of Jones County certified to a copy of these proceedings on the 12th day of April, 1937, and the County Clerk of Yoakum County certified that the proceedings were received by him on the 14th of April at 4:50 P. M. and recorded on the 16th day

of April thereafter. On the margin of these proceedings the County Clerk of Yoakum County made this note: "Return to R. W. Pittman, Seminole, Texas."

On the former trial of this case an original letter from Pittman to Corder was introduced in evidence, but the date of the month on which it was written does not appear but it was evidently written between the 12th and 15th of April as stated by Mr. Pittman. The parts material to this appeal are:

"Seminole, Texas, April, 1937
"Mr. R. B. Corder,
  "Avoka, Texas.
"Dear Mr. Corder:

"I received the court proceedings from Clerk of Jones County last Tuesday and sent them right on to Yoakum County for record and had abstractor Ed Dumas, of Plains to bring the abstract down to date and just got the abstract last Friday and took it to Oberholtzer that afternoon and he went to Midland early Saturday morning to turn it over to his attorney and on same day Mr. Cone phoned me about the abstract and I told him that we would get it to him just as soon as it was checked by attorney at Midland. * * *"

Mr. Corder does not deny the receipt or genuineness of this letter.

Mr. Duff testified that he prepared the deed covering a one-half undivided interest in the minerals on said Section 36–B; that when prepared it contained the name of R. B. Oberholtzer as grantee and so contained such name when acknowledged by Mr. Corder; that he retained the deed and delivered it to R. W. Pittman when requested.

Mr. Oberholtzer testified that Mr. Pittman approached him relative to selling him the minerals about April 1, 1937; that a day or two thereafter he agreed to take the royalty; that he was to be furnished an abstract, which he received on the 19th or 20th of April thereafter; that he carried it promptly to his lawyer at Midland, had it examined, returned it to Mr. Pittman to correct some irregularities and on the 26th of April the contract was consummated; he gave Mr. Pittman his check for the consideration which was afterwards cashed, received the mineral deed which he had not theretofore seen, and had it placed on record; that none of the appellees ever offered to repay all or any part of the money he paid for the minerals and

he was not advised that there was any objection to the consummation of the sale.

The parties agreed that George L. Paxton was the common source of title for both appellant and appellees. The record shows without controversy that R. B. Corder was the community administrator of the community estate of himself and his deceased wife; that there had been no partition among the children and himself of the community property; that on the execution of the deed to Mr. Cone on April 14th he signed it individually and as community administrator of the estate of himself and his deceased wife; while in the execution of the deed of April 27th he failed to sign in his capacity as community survivor he later was required to and did sign in such capacity to correct to conveyance.

The court did not submit any issue on conspiracy or fraud and there is no testimony in the record that would authorize the submission of such issue.

■ The findings of the jury are based on testimony so indefinite, uncertain and unsatisfactory we question the sufficiency thereof to warrant the submission of the fact issues contained in the court's charge to the jury or to sustain the findings thereon. We are inclined to the opinion that the testimony so greatly preponderates against the judgment that a new trial should be granted in the interest of justice. Texas Employers' Ins. Ass'n v. Allen, Tex.Civ.App., 140 S.W.2d 897; Bankers Life & Loan Ass'n v. Chase, Tex. Civ.App., 114 S.W.2d 374. However, we pretermit this question, since we have decided that appellant's contention that the judgment should be reversed and rendered in his behalf must be sustained since no other judgment could be rendered on the undisputed testimony showing that R. B. Corder ratified the transaction and hence the appellees are estopped from assailing the validity of the deed and the findings of the jury on the issues submitted become immaterial.

■ The testimony is that Mr. Corder and his children owned the undivided one-half interest described in the deed; that he was community administrator of the estate of himself and his deceased wife; that he listed the mineral rights on the land for sale with R. W. Pittman; that Mr. Pittman found a purchaser in the person of Mr. Oberholtzer who admittedly

paid the price demanded by Mr. Corder who after offering to return the consideration, which offer was refused, retained the consideration and used and appropriated it. No repudiation of the transaction made on April 26, 1937, appears to have been made until suit was filed on May 14, 1938. No return of the consideration was tendered and no offer to do equity in any way has been made and, in our opinion, the appellees are estopped to rescind this transaction, cancel the deed and recover the mineral rights. On April 26, 1937, Mr. Pittman by letter advised Mr. Corder that "Oberholtzer paid off today and I am enclosing to you my check for $1868.20 to balance less the following bills paid." He then itemizes the school interest he had paid on the land, the expenses for abstract and recording fees and an item of $20 of borrowed money. This letter and the check enclosed were received on the 27th and on the following day Mr. Corder offered to return the check to Mr. Pittman who refused to accept it. There can be no question, therefore, but what Mr. Corder at the time he accepted the consideration for the royalty knew that Oberholtzer was the purchaser; that the amount he received was $10 per acre net less the expenses of interest, abstract and recording fees, and that the deed had been delivered and the transaction closed.

This conveyance was not void and appellees could estop themselves by ratification. W. H. Threadgill et al. v. Butler, 60 Tex. 599; Fennimore v. Ingham et al., Tex.Civ.App., 181 S.W. 513; Gray v. Fenimore, Tex.Com.App., 215 S.W. 956; Burke-Mobray et al. v. Ellis et al., 44 Tex. Civ.App. 21, 97 S.W. 321; Schleicher et al. v. Runge et al., Tex.Civ.App., 37 S.W. 982; Dallas Joint Stock Land Bank of Dallas v. Burck et al., Tex.Civ.App., 102 S.W.2d 1074.

A grantor may on the general principles of ratification by his words, acts and conduct estop himself from denying the delivery of, or from attacking the validity of a deed. 14 Tex.Jur. 827, para. 64.

In 2 Tex.Jur. 487, para. 89, the author says: "The principle is well established that, if one without authority assumes to act as agent, or if an agent exceeds his proper authority, the principal knowingly receiving and retaining the benefit of the transaction will be held liable. This principle is founded on estoppel."

In American Jurisprudence, Vol. 2, page 181, para. 227, the law is stated thus: "It is an established principle of law that where a person acts for another who accepts or retains the benefits or proceeds of his efforts with knowledge of the material facts surrounding the transaction, the latter must be deemed to have ratified the methods employed, as he may not, even though innocent, receive or retain the benefits and at the same time disclaim responsibility for the measures by which they were acquired."

In Horst et al. v. Lightfoot et al., 103 Tex. 643, 132 S.W. 761, 763, Justice Williams, speaking for the Supreme Court relative to the ratification by the principal of the unauthorized act of an agent in connection with the consideration accepted for land, says: "All that was necessary to a ratification was that the proceeds of the sale should have been paid to Resley by Clepper according to his duty and retained by the former. If he received only the money paid in cash and kept it, he must have known that the sale was made partly on credit and have elected to abide by it; and the same conclusion would result, for a stronger reason, from the receipt and retention of both the cash and the credit payments or of any obligation taken for the latter."

See also Harrison et al. v. McMurray et al., 71 Tex. 122, 8 S.W. 612; Vogel et ux. v. Zipp et al., Tex.Civ.App., 90 S.W.2d 668; W. R. Miller & Co. v. Hobdy et al., Tex.Civ.App., 159 S.W. 96; Burke-Mobray et al. v. Ellis et al., supra.

The judgment is reversed and here rendered that appellant, R. V. Oberholtzer, recover of and from the appellees title and possession to an undivided one-half interest in and to the oil, gas and minerals on Section 36–B in Block AX, Public School Land, containing 388 acres, situated in Yoakum County, Texas.