**WYNNEWOOD STATE BANK, Appellant,**

v.

**James L. EMBREY, Appellee.**

No. 17389.

Court of Civil Appeals of Texas, Dallas.

Feb. 20, 1970.

Rehearing Denied March 13, 1970.

———◆———

Wm. Andress, Jr., Andress, Woodgate & Hartt, Sanders & Nolen, Dallas, for appellant.

H. Louis Nichols, Saner, Jack, Sallinger, & Nichols, Dallas, for appellee.

BATEMAN, Justice.

The appellant Wynnewood State Bank sued appellee James L. Embrey on a letter agreement, and now appeals from a take-nothing judgment. The case turns on the interpretation of that letter.

In 1960 one John Harris borrowed $60,000 from appellant, giving his note for that amount secured by the pledge of 249 shares of the capital stock of Mayridge Investment Company and a letter dated November 11, 1960, signed by Embrey agreeing to purchase the said corporate stock, if offered to him within one year from the date thereof, at a price of $60,000.

By August 22, 1961 the unpaid balance of the note was $45,000. The form of Embrey's first letter agreement being unsatisfactory to the Bank Examiner, he gave appellant a new one, as follows:

"I, James Lindsay Embrey, agree to purchase from John T. Harris or the Wynnewood State Bank two hundred forty-nine (249) shares of Mayridge Investment Company Stock, which Mr. John T. Harris has pledged to secure a loan at the Wynnewood State Bank. This offer stands good anytime within ninety (90) days from this date, and the agreement purchase price is to be $45,000.00.

"If for any reason Mr. John T. Harris defaults on the loan mentioned above and the Bank feels that it should be paid, I shall purchase it upon demand of the Wynnewood State Bank."

Thereafter Harris' note was renewed several times, in each instance accompanied by a similar letter from Embrey to appellant, the agreed purchase price of the stock being in each case in an amount equal to the then unpaid balance of Harris' debt to appellant, with a definite time for the purchase stated in each letter, but without any change in the second paragraph. The last renewal note was dated June 28, 1964, in the sum of $27,000, due ninety days after date. Embrey's letter was dated July 28, 1964 and was identical with the one dated August 22, 1961, quoted above, except that in the first paragraph it stated the offer would "stand good" for 180 days, and the purchase price would be $27,000.

Appellant did not offer the stock to Embrey within 180 days after July 28, 1964, or at any other time. Harris having defaulted, appellant sold the stock on January 25, 1966 for $498 to one Ed Mudge. On March 22, 1966 appellant made demand on Embrey to purchase *the loan,* taking the position that the second paragraph of the letter obligates him to do so as Harris defaulted and the Bank "feels that it should be paid." Appellant urges that the second paragraph of the letter should be interpreted and enforced as if it read:

"If for any reason Mr. John T. Harris defaults on the loan mentioned above and the Bank feels that the loan should be paid I shall purchase the loan upon demand of the Wynnewood State Bank."

The trial court sought the aid of the jury in determining the intent of the parties, and the jury found in response to special issues that (1) the parties did not intend the word "it" in the last line of the letter agreement of July 28, 1964 to mean the loan of Harris at the Bank, and (2) that if Embrey did agree to purchase the loan such agreement was limited to

180 days from July 28, 1964. The take-nothing judgment was rendered on that verdict.

Appellant's first point of error is that "the trial court erred in holding that the instruments signed by Embrey agreeing to purchase the note were ambiguous," and its second point is that since the agreements were not ambiguous appellant was entitled to an instructed verdict and judgment for the amount of its debt. These points will be considered together.

Certain general rules applicable to these questions are thus aptly stated in 13 Tex. Jur.2d, Contracts, § 110, pp. 263–265:

"If there is no ambiguity whatever in a written contract, its construction then becomes a question of law for the trial court only. This principle also obtains where, though there is doubt as to the meaning of a written contract, the ambiguity arises solely from the language used in the agreement and not from any extrinsic matters. * * * On the other hand, if a written contract is ambiguous as to the intent of the parties, and if parol evidence is admitted on the matter and is subsequently controverted, the matter of resolving the conflict in the evidence is properly left to the jury. However, where the parol evidence admitted is undisputed, the question as to what the parties intended is a matter for the trial court alone."

■ If the language used in a written contract is such as to give it a certain or definite legal meaning, it is not ambiguous; and a contract is said to be ambiguous only when the application of pertinent rules of interpretation to the instrument as written leaves it genuinely uncertain which of two or more meanings is the proper one. "In other words, if after applying established rules of interpretation to the contract it remains reasonably susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous." Universal

C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

The writing as a whole must be looked to "and given its reasonable, natural and probable meaning. It must be interpreted according to the obvious import of its language without resorting to a subtle or a forced construction. One clause cannot be considered by itself; every clause must be considered with reference to the whole instrument as well as with reference to every other clause." Brown v. Brown, 245 S.W.2d 995, 997 (Tex.Civ.App., Amarillo 1951, writ ref'd).

■ We agree with appellant that the letter agreement signed by Embrey was not ambiguous and that there were no issues to go to the jury. Even if it be said that some doubt exists as to the meaning intended by the parties in their use of the word "it" in the second paragraph of the letter, it appears clearly from the record that this uncertainty, or ambiguity, arises solely from the language used in the letter and not from any extrinsic matters. Therefore, the question was nevertheless one for the court and not for the jury. Dallas Hotel Co. v. Lackey, 203 S.W.2d 557, 561 (Tex.Civ.App., Dallas 1947, writ ref'd n. r. e.); Penn v. Hare, 223 S.W. 527 (Tex.Civ.App., Texarkana 1920, writ dism'd).

However, if the trial court erred in submitting to the jury the questions relating to the intent of the parties, such error was in our opinion harmless. A reading of the entire letter, it seems to us, makes such intent quite clear. It must be conceded that the second paragraph evinces an absence of expertise in grammatical construction; but is its meaning so obscured thereby as to render it ambiguous? An application of the foregoing rules of interpretation persuades us that only one reasonable meaning is conveyed by the letter as a whole, and that is that Embrey's obligation was restricted to a purchase of the Mayridge stock if called upon to do so within the time specified; that their use in the second

paragraph of the last word "it" was intended by the parties to refer to the stock, not the loan.

If appellant's interpretation were accepted the letter as a whole would impose on Embrey two separate and distinct obligations: (1) to purchase the stock and (2) to pay Harris' debt to the bank. This does not seem to us to be a reasonable result of the language used. The underlying purpose of the letter was to assure appellant that Harris' debt would be paid. Appellant's pledge lien on the stock, buttressed by Embrey's agreement to purchase that stock for the full amount of the debt, gave appellant complete protection, conditioned only upon its tendering the stock to Embrey within the time specified.

It does not seem reasonable to us that appellant, being thus assured of payment, would intend that the language of the second paragraph would give the added security now claimed. Neither does it seem reasonable that Embrey intended to promise to purchase both the stock and the note. Moreover, if it can be thought that he intended to purchase the note, as distinguished from *paying* it, we think it reasonable to suppose that the purchase price, as well as the time of performance, would also have been agreed upon; and if the parties had intended to obligate Embrey to pay the note, as distinguished from purchasing it, to us it seems incongruous that they did not agree simply that he pay it, or endorse it, rather than agree upon the more elaborate provisions for the purchase of both the pledged stock and the note it secured. Also, if Embrey's liability for the debt itself were intended, it would seem most unreasonable for there to have been no agreement that upon satisfying that liability he be subrogated to appellant's lien on the stock. We think it would not be a reasonable construction of the letter to hold that the parties intended that appellant should have the right to ignore Embrey's agreement to purchase the stock, then sell the stock to others (as it did) and still have the right to compel Embrey to pay the debt. A study of the letter from its four corners compels the conclusion that the second paragraph of the letter added nothing to the duties imposed on Embrey by the first.

That being true, what did the parties intend to accomplish by the second paragraph? We find nothing in the record to indicate that the parties themselves had in mind any particular object to be achieved thereby; only that the Bank Examiner insisted upon it. It does not matter what effect the Bank Examiner intended this language to have. If it be argued that the parties must have intended all words used by them to have some meaning, we can only say that appellant intended to satisfy the Examiner, and that Embrey intended to satisfy appellant, both parties concluding that to do so would neither add to nor detract from their agreement as expressed in the first paragraph.

We hold, therefore, that the agreement was unambiguous and clearly obligated Embrey only to purchase the Mayridge stock for $27,000, and then only if tendered to him for that purpose within the time specified.

If mistaken in this, however, and an ambiguity did exist, we would apply the well recognized rule that an instrument shall be construed most strongly against him who prepared it. It is undisputed that the letter was prepared by appellant and sent to Embrey to be transcribed on his letterhead, signed and returned. Automatic Radio Mfg. Co. of Texas v. Brandimarte, 389 S.W.2d 738 (Tex.Civ.App., Dallas 1965, writ ref'd n. r. e.).

Moreover, if we be mistaken in holding that any uncertainty of meaning arises solely from the contents of the writing itself, imposing on the court alone the duty of ascertaining its meaning, and it be found that the ambiguity stems from extrinsic matters disclosed by the evidence, we fall back upon the findings by the jury, which coincide with our views as to the intent of the parties.

Therefore, in whatever light we view the matter, we are constrained to overrule the first and second points of error.

By its third point of error appellant says that in the absence of any pleading of ambiguity the trial court erred in submitting issues to the jury as to intent of the parties. We see no merit in this point.

The burden was on appellant to plead and prove its case. It could do so in either of two ways: (1) by securing a holding that the letter was unambiguous and could be given only the construction for which it contends, or, (2) if the letter was ambiguous, by introducing evidence proving that the parties intended the letter to have the meaning which appellant ascribes to it. Skelly Oil Co. v. Archer, 163 Tex. 336, 356 S.W.2d 774, 778 (1962). It attached copies of the note and letter agreement to its petition and pled that the latter "amounts to a written guaranty for the payment of the loan in question * * * and obligates defendant Embrey to pay all sums owing by the terms of the note, including principal, interest and attorney's fees." If this is to be considered as a pleading of an unambiguous contract obligating Embrey to pay the debt, then appellant's own pleading foredooms its right to recover because the face of the letter attached to the petition contains no such express agreement. The only way the petition could be said to support appellant's position would be to consider it as impliedly pleading that the agreement is ambiguous and that the court should so construe it as to obligate Embrey to pay the debt. Then it would be incumbent on appellant to prove, either by the writing itself or by extrinsic evidence, that the instrument was intended by the parties to have the meaning claimed for it. Neece v. A. A. A. Realty Co., 159 Tex. 403, 322 S.W.2d 597 (1959); Skelly Oil Co. v. Archer, supra. Under either of these views there was no duty on Embrey to plead the ambiguity. In the situation disclosed by the record in this case, this was not an affirmative defense or matter in avoidance required by Rule 94, Vernon's Texas Rules of Civil Procedure, to be specially pled.

Appellant argues that not having affirmatively pled the ambiguity Embrey was not entitled to the affirmative submission of the issues, citing Rule 279, T.R. C.P. The fault in this argument is that the issues were not submitted on behalf of Embrey, but on behalf of appellant. If either party needed jury findings on the matter of intent it was appellant, not Embrey. Appellant brought this suit on a contract which the court found to be ambiguous. The burden was then upon appellant to both plead and prove, *and obtain favorable findings,* that the ambiguity should be resolved in its favor. It does not discharge that burden by pointing to the absence of a pleading by the defendant of the ambiguity. The third point of error is overruled.

The judgment for appellee was correct and is affirmed.