INTERNATIONAL INVESTORS LIFE
INSURANCE COMPANY,
INC., Appellant,

v.

Bettie P. UTRECHT and Candice A.
Utrecht, Appellees.

No. 18811.

Court of Civil Appeals of Texas,
Dallas.

April 1, 1976.

Franklin H. Perry, Thompson, Coe, Cousins & Irons, Dallas, for appellant.

William M. Hayner, Flagg, Cooper, Hayner, Miller, Long & Owen, Dallas, for appellees.

AKIN, Justice.

The question presented is whether drowning is included within an accidental death benefit rider to an insurance policy excluding the following risks: "Suffocation, strangulation, or smothering when such death occurs prior to the policy anniversary nearest the insured's fourth birthday."

Plaintiffs Bettie and Candice Utrecht sued International Life Insurance Company for benefits under an accidental death rider to a life insurance policy on Alexander S. Utrecht, who drowned March 14, 1974, at age three years, five months. The death certificate stated that the death was by asphyxia, due to drowning. The defendant paid the face amount of $10,000 to plaintiffs on the basic policy but denied liability under the accidental death double indemnity rider. The defendant contended that drowning was a risk within the exclusion for "suffocation, strangulation, or smothering" and, therefore, not covered by the rider. Plaintiffs argued that drowning is not synonymous with suffocation in the commonly understood meaning of the two words. Alternately, plaintiffs contend that the language in the exclusionary clause is ambiguous and, consequently, should be construed against the defendant who chose the words in the exclusionary clause. The trial court held this language ambiguous and, accordingly, rendered judgment against the insurance company, which appeals. We agree that this language is ambiguous and, accordingly, affirm the judgment.

■ A contract is ambiguous when application of rules of construction leaves it uncertain which of the two meanings is proper. *Coker v. Travelers Insurance Co.*, 533 S.W.2d 400 (Tex.Civ.App.—Dallas, 1976); *Wynnewood State Bank v. Embrey*, 451 S.W.2d 930 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.). Whether an ambiguity exists is a question of law for the court's determination. *Brown v. Payne*, 142 Tex. 102, 176 S.W.2d 306 (1943).

The pertinent language of the accidental death benefit rider is as follows:

For purposes of this agreement accidental death shall mean death which (a) results directly and independently of all other causes from accidental bodily injury, (b) occurs within 90 days after the date such injury was sustained, and (c) is not a direct or indirect result of one or more of the following causes, *which are risks not assumed*:

.    .    .    .    .

(8) *Suffocation, strangulation, or smothering* when such death occurs prior to the Policy anniversary nearest the Insured's fourth birthday. [Emphasis added.]

Defendant resorts to the dictionary to support its contention that drowning was excluded. WEBSTER'S NEW INTERNATIONAL DICTIONARY 2520 (2d ed. 1941) defines "suffocate" as: "To kill by stopping respiration, as by strangling or asphyxiation .   .   .   To compress so as to impede or prevent respiration .   .   .   To extinguish or destroy by, or as by, deprivation of air." The word "drown" defined in this dictionary is: "To be *suffocated* in water or other liquid; to sink and perish in water." [Emphasis added.] Thus, as defendant argues, since the insured drowned and be-

cause drowning is defined as "suffocated in water," it could reasonably be included within the definition of suffocation. Consequently, defendant contends that drowning is an excluded risk. Defendant further argues that the words "strangulation and smothering," although used in conjunction with the word "suffocation," are mere surplusage since they are included within the definition of suffocation.

On the other hand, plaintiff contends that the average person does not understand "suffocation" to include "drowning," and that the exclusion should be interpreted in accordance with this more popular interpretation under the rule that insurance contracts should be construed most favorably to the insured.

■■ We agree with plaintiff that the exclusion is ambiguous and, regardless of medical technicalities, to the average person "suffocation" does not include "drowning." *Cf. De La Cruz v. Combined American Insurance Co.,* 527 S.W.2d 820, 821 (Tex.Civ. App.—Amarillo 1975, writ ref'd n. r. e.). "Drowning" connotes something more than exhaustion of the oxygen supply. It means death resulting from inhalation of water or some other fluid into the lungs. "Suffocation," on the other hand, is ordinarily understood to mean death resulting from exhaustion of the supply of breathable air in an enclosed space. In our opinion, the ordinary person purchasing such an insurance policy would not think of absence of oxygen in the lungs as the immediate physiological cause of death, but rather the external circumstances that would ultimately lead to that result. If a person dies as a result of exhaustion of air in an enclosed space, he is said to "suffocate." If he dies as a result of fluid in the lungs, he is said to "drown," and the fact that the physiological effect of the one is the same as the other does not establish to the average person that the one includes the other. Certainly, one would not say a person "fell into the water and suffocated." Rather, one would say the person drowned.

■ The reasonableness of this interpretation is demonstrated by the context in which "suffocation" is used here. If "suffocation" was intended in the broad sense of death by reason of deprivation of oxygen in the lungs, as urged by defendant, then it would include "strangulation" and "smothering" as well, and these words would be surplusage. We must, however, give effect to all words in the exclusionary clause. *E. g., Williams v. J. & C. Royalty Co.,* 254 S.W.2d 178, 179 (Tex.Civ.App.—San Antonio 1952, writ ref'd).

■ Strangulation is defined as: "Act of strangling, or state of being strangled . . . ." Strangle is defined as "To compress the windpipe of (a person or animal) until death results from stoppage of respiration; to choke to death by compressing the throat, as with the hand or a rope; to throttle." Smother is defined as "To destroy the life of by suffocation; to kill, murder, etc., by depriving of air; as, a child *smothered* in sleep . . . ." WEBSTER'S, *supra.* We do not regard these words as surplusage, and we suppose that they were used to avoid any uncertainty as to whether "strangulation" and "smothering" would be within the exclusion if those words were omitted. Omission of the specific word "drowning" raises a similar uncertainty. Since both "strangulation" and "smothering" draw attention to the external circumstances which ultimately result in death rather than the ultimate physiological effect, the ordinary reader may be expected to interpret "suffocation" to be a word of the same order. We conclude, therefore, that an interpretation of "suffocation" as not including drowning is a reasonable interpretation, if not the only reasonable interpretation of the language of the exclusion.

■ Since words of limitation in insurance policies are strictly construed against the insurer, the interpretation which permits recovery by the insured will be used. *Ramsay v. Maryland American General Insurance Co.,* 533 S.W.2d 344, 19 Tex.Sup. Ct.J. 27 (Tex., 1976); *Gulf Insurance Co. v. Parker Products, Inc.,* 498 S.W.2d 676, 679 (Tex.1973); *Coker v. Travelers Insurance*

*Co., supra; Southwestern Fire and Casualty Co. v. Atkins,* 346 S.W.2d 892 (Tex.Civ.App. —Houston 1961, no writ); *Kelley v. American Insurance Co.,* 316 S.W.2d 452 (Tex.Civ. App.—Texarkana 1958), *affirmed,* 160 Tex. 71, 325 S.W.2d 370 (1959). We hold, therefore, that the language contained in the exclusionary clause must not be construed to include death by drowning. Indeed, had the defendant intended to exclude drowning, it could easily have done so by inserting this word as it included strangulation and smothering. This the defendant chose not to do. Therefore, it is reasonable to conclude that drowning was not intended to be within the exclusion. *See Holt v. George Washington Life Insurance Co.,* 123 A.2d 619, 621 (D.C.1956).

As we stated in *Coker v. Travelers Insurance Co., supra,* "[I]nsurance companies should write policies in clear language, understandable by persons without legal expertise, so that policyholders may fully know the extent of their coverage." This is particularly true when the language may exclude coverage.

Affirmed.