F. M. STIGLER, INC., et al., Appellants,

v.

H.N.C. REALTY COMPANY and Southwest Title Company, Appellees.

No. 19815.

Court of Civil Appeals of Texas, Dallas.

Jan. 31, 1980.

Rehearing Denied Feb. 26, 1980.

Robert S. Addison, Hugh L. Steger, Frederick A. Addison, III, Storey, Armstrong, Steger & Martin, Dallas, for appellants.

Jim E. Cowles, R. Brent Cooper, Cowles, Sorrells, Patterson & Thompson, Dallas, for appellee, Southwest Title Co.

Eugene J. Pitman, DeLange, Hudspeth, Pitman & Katz, Houston, for appellee, H.N.C. Realty Co.

Before AKIN, STOREY and HUMPHREYS, JJ.

AKIN, Justice.

This priority of liens case turns on whether plaintiffs' agent's execution of an agreement subordinating plaintiffs' lien to that of a subsequent lien of defendant, H.N.C. Realty Company, was within the agent's authority. The validity of the subordination agreement depends upon the language in a recorded power of attorney which expressly granted the agent the right to subordinate plaintiffs' lien to a subsequent lien to secure advances for "improvements and construction." Because the undisputed evidence shows that the subsequent lien was not for improvements or construction, we hold that, as a matter of law, the agent lacked authority to execute the subordination agreement, thus rendering that agreement void. We also hold that plaintiffs' failure to tender back the funds received as a down payment, after learning the facts, does not constitute ratification or estoppel. Accordingly, we reverse the judgment of the trial court and remand with instructions.

The crucial facts are undisputed. Plaintiffs, Floyd M. Stigler, Inc., and others, known as the heirs of the Lively estate, sold forty-three acres of land to defendant, Leon D. Hogg, Jr., individually and as trustee; and retained a deed of trust and a vendor's lien to secure the unpaid purchase price. Plaintiffs had entered into a contract for sale of the forty-three acres to Hogg in 1972, which contract was to close by February 15, 1973. Accordingly, plaintiffs executed their warranty deed to Hogg dated February 12, 1973, and delivered it to their agent, R. B. Russell, and Hogg executed a note payable to plaintiffs for $1,418,332.76 and a deed of trust, which contained a provision that it may be subordinated to a lien for construction and improvements on the property. Plaintiffs also executed and filed of record in Dallas County on February 23, 1973, a power of attorney authorizing Russell to subordinate their lien to a lien for improvements to the land. The warranty deed and deed of trust were not

filed of record until August 15, 1973, when the sale closed and when plaintiffs received the down payment of $472,777.60. The delay was occasioned because Hogg was unable to obtain funds for the down payment.

Hogg and Russell organized Interchange Properties, Inc., on May 11, 1973, and that corporation applied for and obtained a loan of $950,000 from H.N.C. Realty Company on August 14, 1973, and secured this loan by granting H.N.C. a deed of trust on the forty-three acres in question. Simultaneously, Hogg conveyed the property to Interchange Properties, Inc., for which Hogg was trustee.

Prior to borrowing these funds, plaintiffs' agent, Russell, executed on July 31, 1973, an instrument subordinating plaintiffs' deed of trust lien to H.N.C.'s deed of trust lien. This instrument was also filed of record on August 15, 1973. The subordination agreement was predicated upon the power of attorney granted Russell by plaintiffs on February 9, 1973, and recorded in the Deed of Records of Dallas County, Texas, on February 23, 1973. This recorded power of attorney appointed R. B. Russell "as our attorney in fact to act for us, and in our name, place and stead to approve closing statements, subordination agreements on improvements and construction loans."

Interchange defaulted and H.N.C. Realty foreclosed on the property on May 7, 1975, and H.N.C. purchased the property at foreclosure. Plaintiffs then sued Hogg on their note and H.N.C. Realty to set aside the foreclosure sale, to declare the subordination invalid, and to declare that plaintiffs had superior title by virtue of their prior vendor's lien. Additionally, plaintiffs sued for recovery on their note and for judicial foreclosure of their deed of trust lien. Hogg and H.N.C. then filed a third party action over and against Southwest Title for indemnity and contribution.

Trial was to a jury. At the close of plaintiffs' case, the judge rendered an instructed verdict against defendant Hogg on his note. No appeal was taken from the

judgment with respect to Hogg. After completion of testimony, the trial judge submitted the case to the jury, over plaintiffs' objections, on six special issues relating to the liens. In response to these issues, the jury found that R. B. Russell was acting as agent for plaintiff from 1972 through August 1973 in connection with the sale of the land in question; that Russell had authority to execute, on plaintiffs' behalf, the instrument dated July 31, 1973, subordinating their deed of trust to that of H.N.C. Realty's deed of trust; that when the plaintiffs received the down payment on the property, they did not know of the subordination agreement executed by Russell, but that Russell, their agent, knew of its execution; that plaintiffs had no knowledge that the funds for the down payment on their property came from the proceeds of H.N.C. loan, but that their agent, Russell, knew this; and that the plaintiffs ratified the action of Russell in executing the subordination of their lien. Acting on these findings of the jury, the trial judge rendered judgment against plaintiffs on their action against H.N.C. and plaintiffs appeal.

■ Plaintiffs first argue that the trial judge erred by not construing the power of attorney and subordination agreement as a matter of law. This is true, plaintiffs contend, because none of the parties pleaded ambiguity, fraud or mistake. We agree. Whether a contract is ambiguous is a question of law. *Brown v. Payne,* 142 Tex. 102, 176 S.W.2d 306, 308 (1943); *International Investors Life Insurance Co. v. Utrecht,* 536 S.W.2d 397 (Tex.Civ.App.-Dallas 1976, no writ). The question of whether a contract is ambiguous is a matter that must be pleaded, and absent a pleading of ambiguity, it is error for the court to admit evidence with respect to the meaning of a writing. *Pickering v. First Pyramid Life Insurance Company of America,* 491 S.W.2d 184, 185 (Tex.Civ.App.-Beaumont 1973, writ ref'd n. r. e.). Furthermore, a writing is ambiguous only when the application of the rules of construction renders the writing capable of two reasonable, yet different meanings. *Coker v. Travelers Insurance Co.,* 533 S.W.2d 400, 401–02 (Tex.Civ.App.-Dallas 1976, no writ).

■ We hold, however, that the language set forth in the power of attorney is not ambiguous. The crucial language in the power of attorney is as follows:

We do hereby further direct, constitute and appoint R. B. Russell as our attorney-in-fact to act for us, and in our name, place, and stead, to approve closing statements, *subordination agreements on improvement and construction loans,* and to distribute the cash proceeds from closing as shown on the attached exhibits. [Emphasis added.]

This language is capable of only one reasonable meaning and that is that Russell's authority to subordinate plaintiffs' lien was limited to executing a subordination agreement only for an improvement and construction loan. Consequently, it was the duty of the trial judge to determine, as a matter of law, the meaning of this unambiguous writing, and it was error to submit the issue of the extent of Russell's authority to the jury. *Tower Contracting Co. v. Flores,* 157 Tex. 297, 302 S.W.2d 396, 399 (Tex.1957); *Maykus v. Texas Bank & Trust Co.,* 550 S.W.2d 396, 399 (Tex.Civ.App.-Dallas 1977, no writ); *Exchange Bank & Trust Co. v. Lone Star Life Insurance Co.,* 546 S.W.2d 948, 953 (Tex.Civ.App.-Dallas 1977, no writ).

■ More specifically, when authority is conferred upon an agent by a formal, written instrument, such as a power of attorney, the authority given the agent will be strictly construed so as to exclude any authortiy not specifically set forth, except authority necessary to effectuate the purpose of the authority granted. *Gouldy v. Metcalf,* 75 Tex. 455, 12 S.W. 830, 831 (1889); *Reese v. Medlock,* 27 Tex. 120 (1863). Consequently, as a matter of law, we hold that Russell had no power to execute a subordination agreement unless it was to a lien securing a loan for improvements and construction on the property.

The crucial question with respect to the validity of the subordination agreement executed by Russell is whether the loan was

an improvement and construction loan. This is true because the validity of the subordination agreement depends upon whether it was executed by the agent within his authority. An issue on this specific question was requested by plaintiffs but refused by the trial judge. We need not remand for a new trial on this question, however, because the evidence conclusively and undisputedly established that the loan was not for construction or improvements and, that H.N.C. either knew this or through the exercise of reasonable care could have ascertained the true extent of Russell's authority prior to the time its loan to Interchange was consummated.

In this respect, the disbursement sheet of H.N.C., written and signed by H.N.C.'s representative at the closing of the loan to Interchange, expressly shows that $472,-777.60 of the loan proceeds are payable to the "Lively Estate Heirs," who are the plaintiffs here. Furthermore, the deed of trust and security agreement, executed by Interchange to H.N.C., show that $263,250 of the loan proceeds were placed in escrow with a bank named by H.N.C. until the loan was repaid on or before August 1, 1976, and that an additional $100,000 was used to purchase a certificate of deposit from the First National Bank in Dallas and endorsed in blank and placed in escrow with the Texas Commerce Bank N.A. of Houston, as additional security.

■ The loan commitment from H.N.C. Realty to Interchange, dated June 28, 1973, provides that the loan was for "the purpose of providing *temporary financial support pending completion of development plans and consummation of permanent financing.*" This agreement also gave H.N.C. Realty the right of first and last refusal of a permanent loan for improvements. Clearly, this instrument conclusively shows that the purpose of the loan was for other purposes than "construction or improvement" and that H.N.C. knew the purpose of the loan. Moreover, H.N.C. had the duty and burden of inquiring into the agent's authority if it intended to rely upon that authority to establish the priority of its lien. Persons

dealing with a purported agent have a duty to ascertain the fact of agency and the extent of the agent's authority. *E. g., Buzard v. Jolly,* 6 S.W. 422, 424 (Tex.1887); *Houston & Texas Central Railroad v. Ford,* 53 Tex. 364, 372 (1880). This H.N.C. apparently did not do. Since plaintiffs' agent, Russell, had no authority to subordinate plaintiffs' lien, plaintiffs are not bound thereby and the subordination agreement is a nullity. Consequently, the trial judge erred in failing to grant plaintiffs' motion for judgment non obstante veredicto on the ground that the subordination agreement was not executed in accordance with the agent's authority.

H.N.C. asserts, nevertheless, that the power of attorney authorizing Russell to subordinate plaintiffs' lien did not preclude the introduction of extrinsic evidence of his authority. Additionally, for the first time on appeal, Southwest Title argues that the power of attorney was ambiguous and that the trial judge correctly refused to construe it and correctly permitted the jury to resolve the ambiguity. In this respect, Southwest Title contends that the issue of ambiguity was tried by implied consent because no exceptions to defendants' pleadings were made by plaintiffs, and no objections were made to extrinsic testimony with respect to intent and authority. These contentions are without merit because the recorded power of attorney was not ambiguous, as we have held. Consequently, the admission of extrinsic testimony varying the terms of the written power of attorney was error because it violated the parol evidence rule. Secondly, appellees had the burden to plead and prove the authority of the agent to execute the subordination agreement because the priority of H.N.C.'s lien depends upon Russell's authority. *Tompkins Machinery & Implement Co. v. Peter,* 84 Tex. 627, 19 S.W. 860 (Tex.1892). *Sun Appliance & Electric, Inc. v. Klein,* 363 S.W.2d 293, 296 (Tex.Civ.App.-Eastland 1962, no writ).

■ Plaintiffs next contend that the trial judge erred in overruling their motion to disregard the jury's finding that plaintiffs ratified their agent's act in executing the

subordination agreement because there is no evidence that the plaintiffs had the knowledge required for ratification of their agent's unauthorized act. We need not pass on the question of whether evidence existed with respect to ratification by the plaintiffs because ratification is an affirmative defense on which defendants had the burden of proof. In view of that burden of proof and, in view of the jury's finding that plaintiffs lacked the requisite knowledge to ratify the unauthorized act of Russell, this affirmative defense was decided adversely to defendants. This is true because, as a matter of law, the requisite knowledge of the subordination agreement on the part of the principal is necessary before the principal can ratify the unauthorized act of his agent. We hold, therefore, that the trial judge erred in declining to disregard the jury's finding of ratification. Thus, we need not pass upon the instruction, about which plaintiffs also complain, that an affirmance may be inferred from a failure to repudiate it. The latter, of course, is dependent upon the principal having knowledge of the unauthorized act. Lacking knowledge of the unauthorized act, the principal is in no position to repudiate it.

■ The defendant, H.N.C., complains of the failure of the trial judge to unconditionally submit the issue of apparent authority, which of course, rests upon estoppel. No question of estoppel exists here because the power of attorney, setting forth Russell's authority was specifically recited in the subordination instrument and thus, H.N.C. was on notice of Russell's limited authority. Apparent authority cannot exist where there is notice of lack of actual authority or a limitation of authority. *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 779 (Tex.1974).

■ There are two types of authority—actual or apparent. Actual authority may be express or implied and is authority conferred upon the agent by the principal. *National Cash Register Co. v. Wichita Frozen Food Lockers,* 172 S.W.2d 781, 787 (Tex. Civ.App.-Fort Worth), *aff'd,* 142 Tex. 109, 176 S.W.2d 161 (1943). Apparent authority, on the other hand, is based upon equitable principles of estoppel. Thus, a party who seeks to rely upon apparent authority of the agent, must plead and prove conduct, on the part of the principal, which would lead a reasonably prudent person, exercising diligence, to believe that the agent has the authority he purports to exercise. *Douglass v. Panama, Inc.* at 778–79; *Chastain v. Cooper & Reed,* 152 Tex. 322, 257 S.W.2d 422, 427 (1953). Thus, apparent authority is created by the conduct of the principal towards third parties with whom the agent will later deal. Apparent authority cannot exist if a third party, such as H.N.C. Realty here, has notice, whether actual or constructive, of the agent's actual authority. *Fidelity Trust Co. v. Fowler,* 217 S.W. 953, 956 (Tex.Civ.App.-Amarillo, 1919, no writ). Because H.N.C. had notice of Russell's limited authority, no question of estoppel based upon apparent authority exists insofar as H.N.C. is concerned.

■ A different argument is presented by Southwest Title. It argues that because plaintiffs declined to tender back the down payment which emanated from the H.N.C. loan, plaintiffs are estopped from repudiating the subordination agreement. The basis of this contention is that the plaintiffs retained the benefits of their agent's unauthorized act after learning that the funds for the down payment came from the H.N.C. loan. Southwest Title argues that the evidence conclusively established that plaintiffs were apprised in the summer of 1975 of Russell's action in subordinating their first mortgage lien, after H.N.C. had foreclosed its lien. Demand was then made by H.N.C. to return the down payment, which plaintiffs declined to do. Instead, plaintiffs filed this action. Thus, our question is whether plaintiffs, by declining to return the funds received in August of 1973 after learning of the true facts of the unauthorized act of Russell, ratified Russell's unauthorized act, as a matter of law. Essentially, Southwest Title's contention is that by retaining the benefits of Russell's unauthorized act after learning of the unauthorized subordination of their lien, plaintiffs ratified that act and, as a matter of law, are "estopped" to deny ratification.

In support of this argument, Southwest Title cites *Oberholtzer v. Myles,* 147 S.W.2d 569, 574 (Tex.Civ.App.-Amarillo, 1941, writ dism'd judgmt cor.). The *Oberholtzer* court held that where the undisputed evidence showed that the principal had, by his actions, ratified a transaction, i. e., a deed, he is estopped from later attacking the validity of the deed. *Oberholtzer* is distinguishable from the case here on its facts. In that case, the principal executed a blank mineral deed and left it in the possession of his agent to sell the mineral interest. Later, the principal notified his agent not to proceed with the sale because the principal had sold the minerals. In response, the agent notified the principal that he (the agent) had already sold the minerals to another and enclosed a check in payment. The principal tendered the check back to his agent, but when the agent refused to accept it, the principal cashed it and used the funds, knowing all of the facts.

In our case, the principals had no knowledge in August of 1973 that the funds which they received were from the fruits of their agent's unauthorized act. Indeed, they did not acquire such knowledge until after H.N.C. had foreclosed and, instead of ratifying the unauthorized act, brought suit to set it aside. Moreover, in our view, it would be inequitable to require them to return these funds when H.N.C. either knew of Russell's lack of authority or, if this was not known, when H.N.C. had a duty to ascertain the extent of the agent's authority. Under these facts, we hold that ratification by estoppel will not lie. *See Reynolds-Penland Co. v. Hexter & Lobello,* 567 S.W.2d 237, 239 (Tex.Civ.App.Dallas 1978, writ ref'd n. r. e.) (holding that equity will not intervene to relieve negligence).

■ Southwest Title's argument of ratification by estoppel misapplies the rule that ratification by estoppel is established where *the principal retains the benefits of his agent's unauthorized act, after learning the true facts.* This was the basis of the *Oberholtzer* decision and is grounded upon sound equitable principles. Southwest Title mis-

applies this rule because it erroneously assumes that plaintiffs are entitled to the down payment only because of Russell's unauthorized act. Plaintiffs' entitlement to retain the down payment from Hogg does not depend upon the source of the funds, but rather upon their contract of sale with Hogg. As set forth in the Restatement (Second) of Agency § 99 (1958), the rule is:

> The retention by a purported principal, with knowledge of the facts and before he has changed his position, *of something which he is not entitled to retain unless an act purported to be done on his account is affirmed,* and to which he makes no claim *except through such act,* constitutes an affirmance unless at the time of such retention he repudiates the act. Even if he repudiates the act, his retention constitutes an affirmance at the election of the other party to the transaction. [Emphasis added.]

Plaintiffs' right to retain the down payment made by Hogg does not depend upon an affirmance of Russell's unauthorized act. Consequently, it is immaterial that the funds for the down payment emanated from the loan between Interchange and H.N.C., which loan would probably not have been made but for the unauthorized subordination of plaintiffs' lien. Accordingly, this equitable rule does not require plaintiffs to tender back to H.N.C. the down payment funds so as to avoid ratification by estoppel.

We turn now to Southwest Title's cross-point complaining of the failure of the trial judge to submit the following two special issues with respect to estoppel: "Do you find . . . that plaintiffs intentionally or carelessly caused H.N.C. to believe that Russell had authority to execute the subordination agreement? Do you find . . . that H.N.C. made the loan to Interchange, in reliance on such belief?" We overrule Southwest Title's cross-point on the ground that the evidence is undisputed that plaintiffs neither carelessly nor intentionally mislead H.N.C. to their detriment. Instead, H.N.C.'s loss was occasioned by its failing to ascertain the true facts with respect to Russell's authority. As we have noted, *infra,* no question of apparent authority exists

where the principals execute a writing delineating the agent's actual authority and by their act in filing that power of attorney of record placed everyone, including H.N.C., on notice of the extent of Russell's authority. In such a situation, equity will not intervene to absolve H.N.C. for its own negligence. *Reynolds-Penland Co. v. Hexter & Lobello* at 240.

Accordingly, the judgment of the trial court is reversed and this cause is remanded with instructions to the trial court to render judgment declaring that the lien of plaintiffs is prior and superior to the lien of H.N.C. Realty; to set aside the foreclosure sale of H.N.C. Realty and the foreclosure sale deed to H.N.C. Realty; and to proceed with a judicial foreclosure of plaintiffs' lien. Pursuant to Tex.R.Civ.P. 434, plaintiffs' action against H.N.C. Realty is hereby severed from the third-party action of H.N.C. Realty against Southwest Title Company since the plaintiffs' rights have been established by this court. Because the merits of the third-party action were not presented to the trial court, we remand under Tex.R. Civ.P. 434 for a determination of the merits of the third-party action. The judgment rendered against Hogg on his note is left undisturbed because no appeal was taken from that part of the judgment. The judgment against Hogg is severed and is thus final.