ACCEPTED
05-17-01335-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/4/2018 11:10 AM
LISA MATZ
CLERK

No. 05-17-01335-CV

_____

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/4/2018 11:10:08 AM
LISA MATZ
Clerk

In the Fifth District Court Appeals
at Dallas, Texas

_____

Wesley Roemer,

*Appellant*

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/4/2018 11:10:08 AM
LISA MATZ
Clerk

v.

Edd Haskins,

*Appellee.*

_____

# Appellant's Brief

_____

Scott P. Stolley
State Bar No. 19284350
scott@appellatehub.com
Stolley Law, P.C.
4810 Purdue Ave.
Dallas, Texas 75209
Phone: (469) 235-4588

Craig A. Albert
State Bar No. 00790076
calbert@cplalaw.com
Cherry Petersen Landry
Albert LLP
8350 N. Central Expressway
Suite 1500
Dallas, Texas 75206
Phone: (214) 382-3040

**Counsel for Appellant Wesley Roemer**

Oral Argument Requested

# LIST OF PARTIES AND COUNSEL

**Appellant/Cross-Appellee/ Plaintiff**

Wesley Roemer

**Appellate Counsel**

Scott P. Stolley
Stolley Law, P.C.
4810 Purdue Ave.
Dallas, Texas 75209

**Trial and Appellate Counsel**

Craig A. Albert
Kartik R. Singapura
Cherry Petersen Landry
Albert LLP
8350 N. Central Expressway
Suite 1500
Dallas, Texas 75206

**Appellee/Cross-Appellant/ Defendant**

Edd Haskins

**Appellate Counsel**

Jeffrey S. Levinger
Levinger PC
1700 Pacific Ave.
Suite 2390
Dallas, Texas 75201

J. Carl Cecere
Cecere PC
6035 McCommas Blvd.
Dallas, Texas 75206

**Trial Counsel**

Michael J. Lang
Crawford, Wishnew & Lang
PLLC
1700 Pacific Ave
Suite 2390
Dallas, Texas 75201

William S. Richmond
Platt Cheema Richmond PLLC
3906 Lemmon Ave.
Suite 212
Dallas, Texas 75219

# TABLE OF CONTENTS

                                                                    **Page**

List of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

_____

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . 14

_____

Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

_____

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      (1) The LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      (2) The Settlement Agreement . . . . . . . . . . . . . . . . . . . 16

      (3) The Endeavor Deals . . . . . . . . . . . . . . . . . . . . . . . 17

      (4) The Southpark Project . . . . . . . . . . . . . . . . . . . . . . 18

      (5) The Steiner Ranch Project . . . . . . . . . . . . . . . . . . . 19

      (6) Roemer's Claims . . . . . . . . . . . . . . . . . . . . . . . . . 21

      (7) The Judicial Resolution . . . . . . . . . . . . . . . . . . . . . 22

Summary of Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    (1)  Denial of Roemer's Summary
        Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    (2)  Granting of Haskins's Summary
        Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    (3)  Erroneous Final Judgment . . . . . . . . . . . . . . . . . . . 25

Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    1.  Paragraph F of the Settlement Agreement
       perpetuated the LLC for certain projects, in-
       cluding current and future Endeavor pro-
       jects.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    2.  The Settlement Agreement does not allow
       Haskins to individually pursue Endeavor
       projects, including the Southpark and Stei-
       ner Projects. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    3.  Haskins admitted that the Southpark and
       Steiner Projects were opportunities of the
       LLC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    4.  Haskins did not conclusively defeat Roe-
       mer's contract claim. . . . . . . . . . . . . . . . . . . . . . . . . 39

    5.  Haskins's fiduciary duties barred him from
       usurping Endeavor projects, including the
       Southpark and Steiner Projects. . . . . . . . . . . . . . . . 41

6. The law of usurpation of corporate opportunities also supports Roemer's appeal. . . . . . . . . . . . . . 43

7. Nothing in the Settlement Agreement waived or limited Haskins's fiduciary duties regarding Endeavor projects. . . . . . . . . . . . . . . . . . . . 46

8. The trial court did not enter any declarations for Haskins. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

9. The Settlement Agreement contains no condition precedent to Roemer's right to recover. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

10. Alternatively, the Settlement Agreement is ambiguous, requiring a remand for a jury trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Appendices

A — Final Judgment (SuppCR4-6)

B — Order on Motions for Summary Judgment (3CR3046-48)

C — Order on Motions for Summary Judgment (3CR3138-40)

D — Settlement Agreement and Release
     (1CR711-718)

# INDEX OF AUTHORITIES

## CASES

Page

*Allen v. Devon Energy Holdings,*
*L.L.C.,*
   367 S.W.3d 355 (Tex. App.—
   Houston [1st Dist.] 2012, rev.
   granted and judgm't set aside
   by agreement) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Arredondo v. City of Dallas,*
   79 S.W.3d 657 (Tex. App.—
   Dallas 2002, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . 53

*Calvert v. Employees Retirement*
*Sys. of Tex.,*
   648 S.W.2d 418 (Tex. App.—
   Austin 1983, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . 51

*Cantey Hanger LLP v. Byrd,*
   467 S.W.3d 477 (Tex. 2015) . . . . . . . . . . . . . . . . . . . . . . 49

*Coker v. Coker,*
   650 S.W.2d 391 (Tex. 1983) . . . . . . . . . . . . . . . . . 28, 29, 53

*Criswell v. European Crossroads*
*Shopping Ctr., Ltd.,*
   792 S.W.2d 945 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . 52

*Dunagan v. Bushey,*
   152 Tex. 530, 263 S.W.2d 148
   (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Forbau v. Aetna Life Ins. Co.,*
   876 S.W.2d 132 (Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . 29

*Furmanite Worldwide, Inc. v.*
*NextCorp, Ltd.*,
   339 S.W.3d 326 (Tex. App.—
   Dallas 2011, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

*Gearhart Indus., Inc. v. Smith*
*Int'l, Inc.*,
   741 F.2d 707 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . .   44

*Guardian Trust Co. v. Bauereisen*,
   132 Tex. 396, 121 S.W.2d 579
   (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 44

*Heritage Res., Inc. v. NationsBank*,
   939 W.W.2d 118 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . .   29

*Highlands Mgmt. Co. v. First*
*Interstate Bank*,
   956 S.W.2d 749 (Tex. App.—
   Houston [14th Dist.] 1997,
   pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   354

*Imperial Group (Texas), Inc. v.*
*Scholnick*,
   709 S.W.2d 358 (Tex. App.—
   Tyler 1986, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . .   48

*In re Hardee*,
   2013 WL 1084494 (Bankr.
   E.D. Tex. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   42

*In re TSC Sieber Servs., LC*,
   2012 WL 5046820 (Bankr.
   E.D. Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   42

*International Bankers Life Ins.*
*Co. v. Holloway,*
 368 S.W.2d 567 (Tex. 1963) . . . . . . . . . . . . . . . . . . . . . . . 44

*Jochec v. Clayburne,*
 863 S.W.2d 516 (Tex. App.—
 Austin 1993, writ denied) . . . . . . . . . . . . . . . . . . . . . . . 47

*Kartsotis v. Bloch,*
 503 S.W.3d 506 (Tex. App.—
 Dallas 2016, pet. denied) . . . . . . . . . . . . . . . . . . . . . . 37, 39

*Landon v. S&H Mktg. Group, Inc.,*
 82 S.W.3d 666 (Tex. App.—
 Eastland 2002, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . 41

*Lifshutz v. Lifshutz,*
 199 S.W.3d 9 (Tex. App.—
 San Antonio 2006, no pet.) . . . . . . . . . . . . . . . . . . . . . . 42

*Nat'l Plan Adm'rs, Inc. v. Nat'l*
*Health Ins. Co.,*
 235 S.W.3d 695 (Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . 46

*Paddock v. Siemoneit,*
 147 Tex. 571, 218 S.W.2d 428
 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Petro Pro, Ltd. v. Upland Res. Inc.,*
 279 S.W.3d 743 (Tex. App.—
 Amarillo 2007, pet. denied) . . . . . . . . . . . . . . . . . . . . 50, 51

*Redmon v. Griffith*,
   202 S.W.3d 225 (Tex. App.—
   Tyler 2006, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Reilly v. Rangers Mgmt., Inc.*,
   727 S.W.2d 527 (Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Sage St. Assocs. v. Northdale
Constr. Co.*,
   863 S.W.2d 438 (Tex.1993) . . . . . . . . . . . . . . . . . . . . . . . . 54

*Strebel v. Wimberly*,
   371 S.W.3d 267 (Tex. App.—
   Houston [1st Dist.] 2012, pet.
   denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 46, 47

*White v. Moore*,
   760 S.W.2d 242 (Tex.1988) . . . . . . . . . . . . . . . . . . . . . . . . 54

*Wynnewood State Bank v. Embrey*,
   451 S.W.2d 930 (Tex. Civ. App.
   —Dallas 1970, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . 28

*XCO Prod. Co. v. Jamison*,
   194 S.W.3d 622 (Tex. App.—
   Houston [14th Dist.] 2006,
   pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

#### STATUTES

Tex. Civ. Prac. & Rem. Code ch. 37 . . . . . . . . . . . . . . . . . . . . 26

## STATEMENT OF THE CASE

This dispute between the two co-managers/members of a Texas real-estate-development LLC was adjudicated by a partial summary judgment, followed by a bench trial before the Hon Gena Slaughter, of the 191st District Court of Dallas County. (SuppCR4-6.)

Plaintiff/Appellant Wesley Roemer appeals:

(1) the orders denying him summary judgment on (a) his declaratory-judgment claim to construe the contract at issue, and (b) his breach-of-fiduciary-duty claim against Defendant/Appellee Edd Haskins for usurping the Southpark Project;

(2) the summary-judgment orders granting Haskins (a) a take-nothing summary judgment on Roemer's breach-of-contract and breach-of-fiduciary-duty claims, and (b) declaratory relief regarding the contract at issue; and

(3) the Final Judgment, but only insofar as it incorporates those prior summary-judgment orders against Roemer and for Haskins.

(3CR3046-48, 3138-40; SuppCR4-6.)

Haskins has cross-appealed as to the awards made against him in the Final Judgment (entered after the bench trial), awarding Roemer: (a) about $117,000 in actual damages for the Chapel

Colorado and Brodie Projects; (b) $50,000 in attorney's fees for trial; (c) additional attorney's fees for appeal; (d) prejudgment interest; and (e) post-judgment interest. (SuppCR4-6.)

# STATEMENT REGARDING ORAL ARGUMENT

Roemer requests oral argument because of the complicated summary-judgment history of this case.

## ISSUES

**Erroneous Summary-Judgment Orders** — Did the trial court commit reversible error by: (a) denying Roemer's motion for summary judgment on his claim to declare the contract's interpretation and on his breach-of-fiduciary-duty claim regarding the Southpark Project; (b) granting Haskins a take-nothing summary judgment on Roemer's breach-of-contract and fiduciary-duty claims; and (c) granting Haskins a summary judgment on his claim to declare the contract's interpretation?

## (1)  The LLC

In July 2008, Roemer and Haskins began operating a real-estate-development business through an entity they formed, called Haskins/Roemer, L.L.C. (the "LLC"). (1CR705-06.) Through the LLC, Roemer and Haskins developed sites for the construction of self-storage facilities. (1CR706.)

## (2)  The Settlement Agreement

A dispute arose between Roemer and Haskins about their relative roles in the LLC, and in December 2011, they entered into a Settlement Agreement and Release (the "Settlement Agreement") to resolve the dispute. (1CR706-07, 711-18, 726-27.) At the time of the Settlement Agreement, Roemer and Haskins, as the sole members of the LLC, had the option of winding up the LLC, but they chose not to do so. (1CR706-07.) Instead, as Haskins said, "at the time the Settlement Agreement was entered into, we felt like the association between the two of us was more beneficial than each of us individually going our own way

... ." (1CR731; *see* 1CR712 (Recital H, saying the same thing).)

Therefore, the Settlement Agreement states that the LLC continued to exist for the limited purpose of the following deals: "Pflugerville, Brodie, Chapel Colorado *and any current or future Endeavor [Real Estate Group] deals* ... ." (1CR715 (emphasis added).) Endeavor Real Estate Group acted as an equity partner on the Brodie Project with the LLC. (1CR695.) On behalf of the LLC, Roemer also worked extensively on developing other potential projects with Endeavor. (2CR1730-34; 3CR1924-27, 1934-36.)

### (3) The Endeavor Deals

Expressly dealing with "Endeavor deals," Paragraph F of the Settlement Agreement states in pertinent part:

> Notwithstanding the foregoing, the Parties agree to give Endeavor the right of first refusal on all self-storage deals in either the Austin or DFW SMSA. This requirement will expire on August 31, 2014 or one year after the issuance of a CO for any Endeavor Haskins/Roemer, LLC self-storage project commenced before August 31, 2013, whichever comes later. Each party must be copied on all correspondence offer or presentation of any deal made to Endeavor. If Endeavor declines to pursue such deal within fourteen (14) days after same is presented to Endeavor either party shall be free to take any such

> deal to third-parties with no obligation to Haskins/Roemer LLC or the other Party. If, however, Endeavor has indicated an interest in pursuing the deal the Parties agree that they will not take the deal to any third-party so long as Endeavor continues to actively pursue such deal.

(1CR715.) This language ensures that if there are projects with Endeavor, such projects will be done for the benefit of the LLC, rather than for the benefit of Roemer or Haskins individually. (1CR705-09, 715; 2CR1706-08, 1714-17, 1730-34; 3CR1924-26, 1934-36; *see* pages 26-39, below.)

## (4) The Southpark Project

As early as January 2011, almost a year before execution of the Settlement Agreement, Roemer began performing significant feasibility work and financial projections on behalf of the LLC for a project known as Southpark Meadows (the "Southpark Project"). (1CR708.) The Southpark Project was a self-storage project in the Austin SMSA,[1] which was underwritten and developed

---

[1] SMSA is an abbreviation for Standard Metropolitan Statistical Area. (1CR558-59.)

with Endeavor. (*Id.*)

Roemer performed work on the Southpark Project until Haskins unilaterally excluded Roemer and the LLC from the project. (*Id.*) Haskins cut Roemer and the LLC out of communications with Endeavor, and took the project for himself. (1CR705-09.) Haskins pursued the Southpark Project with Endeavor for the benefit of Southpark SS, LLC ("Southpark SS"), an entity formed by Haskins in July 2012, nearly four months before Haskins unilaterally excluded Roemer and the LLC from the Southpark Project. (1CR788-90.)

Earlier emails from Endeavor showed Endeavor's understanding that the LLC was part of the Southpark Project. (2CR848 (Roemer explaining how Endeavor sent him banking documents showing his liability on the Southpark Project, thus reflecting Endeavor's understanding that Roemer was indeed part of the deal).)

(5)  The Steiner Ranch Project

For the LLC, Roemer was in charge of preparing *pro formas*,

feasibility studies, and unit-mix analysis, to send to Endeavor related to the Steiner Ranch Project, and he, in fact, did provide those services, both before and after the Settlement Agreement. (3CR1934-35.) Haskins's email to Roemer dated August 31, 2012 (long after the Settlement Agreement) confirms that Roemer was preparing the "update" on Steiner Ranch to provide to Endeavor. (3CR1937 ("Steiner is on a fast track to close. Can you have the update by Monday?").) Haskins's email to Roemer dated September 1, 2012 instructs him, in addition to "updating rents and demands," to "project separately what this will look like if they [the competitors] actually build the dam site project and both [the competitors' project and the project of Endeavor/Haskins/Roemer] are in lease-up at the same time." (3CR1938.)

As reflected in the September 1st email, Roemer was working on this "as fast as I can." (*Id.*) In response to these instructions, on September 6, 2012, Roemer delivered the "Proforma Storage Steiner Marshall Ford Site," which reflects his extensive work on the Steiner Ranch Project being developed by Endeavor and the LLC. (3CR1939-44.) On that same day, Roemer sent to Endeavor

the related report entitled "Estimate Demand for Steiner Ranch/ Marshall." (3CR1945-54.)

After Roemer's delivery of this work product, Haskins stopped communicating with Roemer with any regularity. In the next day or so, Haskins declared unilaterally that the LLC was "terminated." (3CR1935.)

### (6) Roemer's Claims

In this lawsuit, Roemer contends (among other things) that by forming Southpark SS and pursuing the Southpark Project with Endeavor, Haskins breached the Settlement Agreement and his fiduciary duty to the LLC, by usurping the opportunity belonging to the LLC. (1CR23-24.) Roemer also asserted claims for breach of contract and breach of fiduciary duty with respect to any other Endeavor projects that Haskins usurped for himself. (1CR33.) During discovery, Roemer learned that Haskins had usurped at least one other Endeavor project (Steiner Ranch). (*See* pages 19-21, above.) Further, Roemer asserted claims for money

that Haskins owed him for the Chapel Colorado and Brodie Projects. (1CR480-83.)

## (7) The Judicial Resolution

Roemer filed a traditional motion for partial summary judgment, seeking (a) a declaration construing Paragraph F of the Settlement Agreement, and (b) imposition of liability on Haskins for his breach of fiduciary duty in usurping the LLC's opportunity in the Southpark Project. (1CR693-702.) Haskins filed multiple motions for summary judgment on various topics. (1CR101-23, 1CR281-323; 2CR1886-94; 3CR2442-54.)

The trial court denied Roemer's motion for summary judgment and granted three of Haskins's motion for summary judgment.[2] (3CR3046-48; SuppCR4-6.) But in the process, the court reserved for a bench trial Roemer's claims regarding the Brodie and Chapel Colorado Projects. (3CR3046-48, 3138-40.) After the

---

[2] The trial court also granted a fourth motion for summary judgment that Haskins filed (regarding NL Land Holdings), but that summary judgment is not at issue in this appeal. (3CR2442-54.)

bench trial, the court entered judgment awarding amounts to Roemer for the Brodie and Chapel Colorado Projects, as described on pages 12-13, above.

## SUMMARY OF ARGUMENTS

(1) **Denial of Roemer's Summary Judgment** — The trial court erred in denying Roemer's motion for summary judgment on his declaratory and fiduciary-duty claims, because (a) the Settlement Agreement clearly and unambiguously binds Haskins to do current and future Endeavor projects through the LLC, (b) Texas law imposes fiduciary duties on Haskins as an LLC manager, (c) the Settlement Agreement did not waive or limit Haskins's fiduciary duties, and (d) Haskins breached his fiduciary duties by usurping the Southpark Project for himself. Roemer is entitled to (a) a summary judgment declaring the interpretation of the Settlement Agreement in his favor, (b) a summary judgment that Haskins is liable for breach of fiduciary duty related to the Southpark Project, and (c) a remand for a trial on remaining issues.

(2) **Granting of Haskins's Summary Judgment** — For the reasons listed above, the trial court erred in granting Haskins (a) a take-nothing summary judgment on Roemer's breach-of-contract and fiduciary-duty claims, and (b) a summary judgment on

Haskins's declaratory claim. The trial court also erred, because Haskins did not prove his lack of liability as a matter of law, and Roemer raised genuine issues of material fact that precluded summary judgment. An alternative ground for reversal is that if the Settlement Agreement is not construed in Roemer's favor as a matter of law, then the agreement is, at a minimum, ambiguous, which would create a fact issue that precludes summary judgment.

(3) **Erroneous Final Judgment** — The summary-judgment orders, which were incorporated in the Final Judgment, erroneously deprived Roemer of a trial on his breach-of-fiduciary-duty and breach-of-contract claims, thus necessitating a remand for a trial on those claims. The judgment (and the underlying orders) are also defective by not actually making any declarations regarding interpretation of the Settlement Agreement.

## ARGUMENTS

1. **Paragraph F of the Settlement Agreement per-petuated the LLC for certain projects, including current and future Endeavor projects.**

Under the Declaratory Judgments Act (Texas Civil Practice and Remedies Code ch. 37), Roemer asked the trial court to construe the Settlement Agreement (1CR697-98), including the key Paragraph F, which reads:

> F. <u>Independent Deals.</u> With the exception of Pflu-gerville, Brodie, Chapel Colorado and any current or future Endeavor deals, Haskins/Roemer, LLC shall not pursue any future deals. Roemer and Haskins are free to pursue deals either independently or with other entities. Notwithstanding the existence of Haskins/Roemer, LLC, the Haskins/Roemer, LLC Operating Agreement, or this Settlement Agreement, either Haskins or Roemer may engage in whatever activities they choose, whether the same may be competitive with Haskins/Roemer, LLC or otherwise without having or incurring any obligation to offer any interest in such activities to Haskins/Roemer, LLC or any other member. Nothing in this Settle-ment Agreement or the Haskins/Roemer Operating Agreement shall prevent the members from engaging in such activities, or require any member to permit Haskins/Roemer, LLC or any other member to par-ticipate in any such activities, and as a material part of each Parties' consideration under this Settlement Agreement, each Party hereby waives any such right or claim of participation.

Notwithstanding the foregoing, the Parties agree to give Endeavor the right of first refusal on all self-storage deals in either the Austin or DFW SMSA. This requirement will expire on August 31, 2014 or one year after the issuance of a CO for any Endeavor Haskins/ Roemer, LLC self-storage project commenced before August 31, 2014, whichever comes later. Each party must be copied on all correspondence, offer or presentation of any deal made to Endeavor. If Endeavor declines to pursue such deal, within fourteen (14) days after same is presented to Endeavor either party shall be free to take any such deal to third-parties with no obligation to Haskins/ Roemer, LLC or the other Party. If, however, Endeavor has indicated an interest in pursuing the deal, the Parties agree that they will not take the deal to any third-party so long as Endeavor continues to actively pursue such deal.

(1CR715.)

Based on the plain, unambiguous words of that paragraph, Roemer requested that the trial court declare, as a matter of law, the following:

(a) Both Roemer and Haskins are free to pursue any deals for development of self-storage facilities without any obligation to each other or the LLC, except for the following deals: (a) Pflugerville; (b) Brodie; (c) Chapel Colorado; and (d) any current or future deals with Endeavor.

(b) For all self-storage deals in the Austin or Dallas-Fort Worth SMSAs, the LLC must present the deal to Endeavor subject to the stated deadline, at which point Endeavor has the right of first refusal on such deals.

(1CR697-98.)

These requests obviously required the court to construe the Settlement Agreement, which is subject to the usual rules for contract interpretation. Among other things, the contract must be construed as a whole. *E.g.*, *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). This is an application of the long-established rule that "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Guardian Trust Co. v. Bauereisen*, 132 Tex. 396, 121 S.W.2d 579, 583 (1938); *see, e.g.*, *Wynnewood State Bank v. Embrey*, 451 S.W.2d 930, 932 (Tex. Civ. App.—Dallas 1970, writ ref'd n.r.e.).

The court must examine and consider the entire writing in

an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *E.g.*, *Coker*, 650 S.W.2d at 393. Texas courts presume that the parties to the contract intend every clause to have some effect. *E.g.*, *Heritage Res., Inc. v. NationsBank,* 939 W.W.2d 118, 121 (Tex. 1996); *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Moreover, a specific provision controls over a general provision. *E.g.*, *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-34 (Tex. 1994).

In this case, Roemer's declaratory requests reflect a plain-reading construction that gives full force and effect to the entire Settlement Agreement and gives controlling effect to specific provisions over general provisions.

Paragraph F starts by confirming that the LLC will continue in business, stating: "With the exception of Pflugerville, Brodie, Chapel Colorado and any current or future Endeavor deals, Haskins/Roemer, LLC shall not pursue any future deals." (1CR715.) Although that first sentence of Paragraph F is partially stated in the negative (that the LLC "shall not pursue any

future deals"), the sentence also makes clear that the LLC *will continue* for certain projects, including for "any current or future Endeavor deals." (*Id.*) Other language in the Settlement Agreement sets out the terms under which the LLC will continue. (1CR711-18.)

The continuation of the LLC to do Endeavor projects is confirmed by Paragraph H. of the Recitals, which states:

> H. Whereas, Haskins/Roemer, LLC is presently engaged in development deals with Endeavor Real Estate Group ("Endeavor") and Haskins/Roemer, LLC wishes to continue to do business or attempt to do business with Endeavor and the parties believe they may more successfully deal with Endeavor as Haskins/Roemer, LLC rather than as Haskins or Roemer in their individual capacity.

(1CR712.) This recital of the Agreement's purpose must be given effect when interpreting the Agreement. *See, e.g., Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 336 (Tex. App.—Dallas 2011, no pet.) (court may review purpose and intent expressed in a "recital," which is "[a] preliminary statement in a contract or deed explaining the reasons for entering into it or the background of the transaction").

After the first sentence, the next few sentences of Paragraph F state that Roemer and Haskins are otherwise free to independently pursue other projects. (1CR715.) But then the first sentence of the second paragraph (under Paragraph F) states the parties' intent that the freedom to independently pursue other projects is restricted: "Notwithstanding the foregoing, the Parties agree to give Endeavor the right of first refusal on all self-storage deals in either the Austin or DFW SMSA." (*Id.*) The next few sentences then set out procedures for giving Endeavor the opportunity to be involved in such projects with the LLC. (*Id.*)

Importantly, the second paragraph of Paragraph F makes clear that any project Endeavor decides to pursue will remain a project of the LLC. Roemer and Haskins are prohibited from taking any such projects for themselves. The specific language is:

> If Endeavor declines to pursue such deal, within fourteen (14) days after same is presented to Endeavor either party shall be free to take any such deal to third-parties with no obligation to Haskins/ Roemer, LLC or the other Party. If, however, Endeavor has indicated an interest in pursuing the deal, the Parties agree that they will not take the deal to any third-party so long as Endeavor continues to actively pursue such deal.

(*Id.*)

This language makes clear that as long as Endeavor is interested in (or is "pursuing") a project, Roemer and Haskins must pursue the project through the LLC, not independently for themselves. The parties can independently pursue such projects with other investors besides Endeavor only if Endeavor has turned down and is no longer pursuing the project. But neither Roemer nor Haskins is free to independently pursue such a project *with Endeavor's participation*. The key to independently pursuing a project is whether Endeavor is involved: If Endeavor is involved, the project belongs to the LLC.

Roemer offers a common-sense, rational reading of the Settlement Agreement. The reading offered by Haskins is not reasonable because it renders meaningless multiple portions of the Settlement Agreement, including the first sentence of Paragraph F, the second paragraph of paragraph F, and Recital H. Thus, the trial court erred by not reading the language in Roemer's favor as a matter of law, which led the court into the error of granting

summary judgment to Haskins and denying the summary judgment that Roemer requested. Roemer is entitled to the declarations he requested regarding the Settlement Agreement's meaning, and Haskins is not entitled to the declarations he requested.[3]

## 2. The Settlement Agreement does not allow Haskins to individually pursue Endeavor projects, including the Southpark and Steiner Projects.

Haskins erroneously defended his conduct by claiming that the Settlement Agreement authorizes him to pursue individual deals. But the parties expressly agreed that the LLC would continue its existence for the purpose of "any current or future Endeavor deals." (1CR 715.) Paragraph F's contractual allowance of "independent deals" is harmonized in the context of the first sentence, which expressly saves the following opportunities for the LLC: "*Pflugerville, Brodie, Chapel Colorado and any current or future Endeavor deals.*" (*Id.* (emphasis added).)

---

[3] If the Court believes that Haskins has proffered a reasonable interpretation, then the contract is ambiguous. This scenario is discussed in section 10, below.

In furtherance of the preservation of "any current or future Endeavor deals" for the LLC, the Settlement Agreement expressly:

a. Sets out a fee-split schedule for "Endeavor projects into which Haskins/Roemer, LLC enters into a Development Agreement … ." (1CR713.)

b. Splits equally the brokerage commission for such Endeavor projects: "The Parties agree that any brokerage fee that Haskins/Roemer LLC is to receive under any Endeavor development agreement … will be evenly split between Haskins and Roemer." (*Id.*)

c. Splits equally the equity taken by Haskins and Roemer in such future Endeavor projects: "The Parties agree that all any equity interest that Haskins/Roemer, LLC receives under any development agreement with Endeavor will be evenly split between Haskins and Roemer." (1CR715.)

It is undisputed the Southpark Project is a project involving

Endeavor. (1CR708.) Therefore, it does not fall within the category of "independent deals" allowed by Paragraph F of the Settlement Agreement. (*See* 1CR715.) Indeed, Haskins admitted that before excluding Roemer and the LLC from the Southpark Project in October 2012, the LLC was in a position to pursue that project with Endeavor. (1CR744.)

Despite the language in Paragraph F, Haskins formed Southpark SS in July 2012 for the purpose of doing the Southpark Project with Endeavor. (1CR788-90.) The birth of this new entity was purportedly the product of Haskins "exercise[ing] our rights under the Settlement Agreement to compete with Mr. Roemer and with Haskins and Roemer." (1CR741.)

But the Settlement Agreement includes no such unilateral right to omit the LLC from the Southpark Project, which is an Endeavor project within the Austin SMSA that was developed before the expiration date of August 31, 2014. (1CR707-08.) To the contrary, the Settlement Agreement expressly states that such deals belong to the LLC and may not be pursued by Haskins individually. (1CR715.)

The same is true of other projects that Haskins has done with Endeavor (whether known to Roemer or unknown to Roemer) before the expiration date stated in Paragraph F. Thus, Roemer is entitled to his declarations, and Haskins is not entitled to the declarations he sought. (1CR298, 697-98.)

Finally, Haskins included a request for declarations that essentially asked the court to rule that Haskins could do deals with Endeavor if Endeavor chose him over the LLC. (1CR298.) But as discussed earlier, Paragraph F means that if Endeavor is in the project, then it is an LLC opportunity. (*See* pages 26-36, above.) If Endeavor wants to do the deal, then the LLC must be involved, not Haskins or Roemer individually.

## 3. Haskins admitted that the Southpark and Steiner Projects were opportunities of the LLC.

Regarding the Southpark Project, Roemer was in charge of preparing *pro formas*, feasibility studies, and unit-mix analysis, to send to Endeavor, and he, in fact, did that work for the LLC relating to the Southpark Project. (2CR1714-17.) Haskins sent emails to Roemer reflecting that Roemer was running that aspect

of the project with Endeavor and that he (Haskins) was not involved. (2CR1718.) In the same period, Haskins was discussing with Roemer in writing what the "stake" in Southpark would be for the LLC. (2CR1719.) When addressing the "stake" or "Southpark Splits," Haskins assured Roemer in writing that "I don't expect them [Endeavor] to screw us." (2CR1720.)

When Roemer expressed further concern about the "split," Haskins encouraged Roemer in writing to "feel free to speak with him [Chris Ellis at Endeavor] about it." (2CR1722.) These contemporaneous email communications confirm that the Southpark Project was an LLC project. *See, e.g.*, *Kartsotis v. Bloch*, 503 S.W.3d 506, 516 (Tex. App.—Dallas 2016, pet. denied) ("In determining the parties' intent, we may consider the construction the parties placed on the contract as evidenced by their conduct."). At minimum, these communications raised a fact question to preclude a summary judgment for Haskins.

Another "Endeavor deal" in dispute is the Steiner Project. With respect to this project, Roemer was similarly in charge of preparing a *pro forma*, feasibility studies, and unit-mix analysis

to send to Endeavor, and he, in fact, did provide those services for the LLC, both before and after the Settlement Agreement. (3CR1934-35.) Haskins sent an email to Roemer dated August 31, 2012 (long after the Settlement Agreement), which confirms that Roemer was preparing the "update" on Steiner to provide to Endeavor. (3CR1934-37.)

Further, Haskins's email to Roemer dated September 1, 2012 instructs Roemer, in addition to "updating rents and demands," to "project separately what this will look like if they [the competitors] actually build the dam site project and both [the competitors' project and the project of Endeavor/Haskins/Roemer] are in lease-up at the same time." (3CR1938.) In response to these instructions, on September 6, 2012, Roemer delivered the "Proforma Storage Steiner Marshall Ford Site," which reflects Roemer's extensive work on the Steiner Project being developed by Endeavor in cooperation with the LLC. (3CR1939-44.) On that same day, Roemer sent to Endeavor a related report entitled "Estimate Demand for Steiner Ranch/Marshall," further evidencing his work related to Steiner Ranch on behalf of the LLC.

(3CR1945-54.)

Accordingly, Haskins's own admissions, as well as communications between the parties, (a) demonstrate that Roemer's interpretation is correct, and (b) contradict the positions now taken by Haskins. The parties contemplated preserving certain Endeavor deals for the benefit of the LLC, and indeed, operated in that manner after execution of the Settlement Agreement. This post-execution conduct demonstrates that both parties intended the Settlement Agreement to mean what Roemer advocates in this case. *See, e.g.*, *Kartsotis v. Bloch*, 503 S.W.3d 506, 516 (Tex. App.—Dallas 2016, pet. denied) ("In determining the parties' intent, we may consider the construction the parties placed on the contract as evidenced by their conduct.").

### 4. Haskins did not conclusively defeat Roemer's contract claim.

In moving for summary judgment, Haskins argued that he had conclusively defeated Roemer's contract claim, although Haskins limited that argument to the Southpark and Steiner Ranch Projects. (1CR310-13.)

First, he argued that Roemer cannot prove a breach, because Haskins was free under the Settlement Agreement to take Endeavor deals for himself. (1CR311-12.) But as demonstrated elsewhere in this brief, the Settlement Agreement required that the Endeavor deals remain with the LLC. (*See* sections 1-3, above.)

Second, Haskins argued that Roemer did not perform duties he was required to perform (specifically, to identify the two sites for Southpark and Steiner). (1CR312-13.) But nothing in the Settlement Agreement made site selection by Roemer a condition precedent to his ability to recover. (*See* 1CR711-18.) Indeed, the Settlement Agreement contains no preconditions that Roemer had to perform in order to be able to recover. (*See* section 9, below.) Further, to the extent Roemer had to contribute to those two projects, he in fact performed significant work. (*See* pages 18-22, 36-39, above.)

In short, Haskins did not conclusively prove that Roemer cannot recover on his contract claim. At a minimum, the record shows there are fact issues that preclude summary judgment on the contract claim.

### 5. Haskins's fiduciary duties barred him from usurping Endeavor projects, including the Southpark and Steiner Projects.

A member-manager of an LLC, like Haskins, owes a fiduciary duty to the LLC itself. *See, e.g.*, *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 393 (Tex. App.—Houston [1st Dist.] 2012, rev. granted and judgm't set aside by agreement); *Strebel v. Wimberly*, 371 S.W.3d 267, 284 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

This duty of loyalty dictates that a manager-member must act in good faith and must not allow his or her personal interests to prevail over the interests of the company. *Strebel*, 371 S.W.3d at 284. The duty of loyalty requires an extreme measure of candor, unselfishness, and good faith on the part of the manager-member. *Id.* A fiduciary is under an obligation not to usurp company opportunities for personal gain. *See, e.g.*, *Landon v. S&H Mktg. Group, Inc.*, 82 S.W.3d 666, 672 (Tex. App.—Eastland 2002, no pet.).

Regarding Southpark, on November 12, 2012, Haskins

usurped the LLC's opportunity by having his newly created entity, Southpark SS, LLC, enter into a Development Management Agreement with a sole-purpose Endeavor entity called South First All Stor, Ltd. (2CR1355-56.) Regarding Steiner, on January 10, 2014, Haskins usurped the LLC's opportunity by having his newly created entity, Steiner SS, LLC, enter into a Development Management Agreement with a sole-purpose Endeavor entity called Steiner MF, Ltd. (2CR1084.)

By individually pursuing the Southpark and Steiner Projects with Endeavor, Haskins breached his fiduciary duty of loyalty owed to the LLC (for which Roemer is suing as the derivative plaintiff (1CR23-24)), in addition to breaching the Settlement Agreement. *See Lifshutz v. Lifshutz*, 199 S.W.3d 9, 19 (Tex. App.—San Antonio 2006, no pet.); *In re Hardee,* 2013 WL 1084494, at *9 (Bankr. E.D. Tex. 2013) (managing member owed LLC formal fiduciary duties based on Texas LLC law); *In re TSC Sieber Servs., LC,* 2012 WL 5046820, at *7 (Bankr. E.D. Tex. 2012).

Accordingly, the trial court should have granted Roemer's

traditional motion for partial summary judgment regarding Haskins's usurpation of the Southpark Project, while reserving for trial the determination of damages and the determination whether Haskins is liable for usurping other LLC opportunities with Endeavor. (1CR702.)

### 6. The law of usurpation of corporate opportunities also supports Roemer's appeal.

It is well-settled Texas law that officers and directors of a corporation are fiduciaries. *See, e.g., Paddock v. Siemoneit*, 147 Tex. 571, 218 S.W.2d 428, 431 (1949) ("Undoubtedly, as a director and the managing officer of the corporation, [Defendant] occupied the position of a fiduciary towards the company."); *see also Redmon v. Griffith*, 202 S.W.3d 225, 237 (Tex. App.—Tyler 2006, pet. denied) (noting fiduciary duty among co-shareholders of an LLC may exist).

As fiduciaries, officers and directors owe to the corporation a duty of loyalty that specifically prohibits them from wrongfully diverting corporate opportunities for themselves. *See, e.g., International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576

(Tex. 1963) ("A corporate fiduciary is under obligation not to usurp corporate opportunities for personal gain or wrongfully diverting corporate opportunities themselves."); *Dunagan v. Bushey*, 152 Tex. 530, 263 S.W.2d 148, 152 (1953) ("The directors of a corporation stand in a fiduciary relationship to the corporation and its stockholders, and they are without authority to act as such in a matter in which the director's interest is adverse to that of the corporation.").

Moreover, the duty of loyalty requires an extreme measure of candor, unselfishness, and good faith on the part of the officer or director. *E.g.*, *Holloway*, 368 S.W.2d at 577. Transactions in which a corporate fiduciary derives personal profit are subject to the closest examination. *Id.*

Importantly, the burden of proof is on the interested officer or director to show that the conduct under consideration is not a usurpation of a corporate opportunity. *See id.* at 576; *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 720 (5th Cir. 1984). The summary-judgment record demonstrates that Haskins

usurped company opportunities belonging to the LLC. (*See* section 5, above.) At a minimum, there is a fact issue about this — particularly in view of the rule that the burden shifted to Haskins to demonstrate that he *did not* usurp company opportunities.

Haskins is a co-managing member of the LLC. (1CR727.) Moreover, the parties expressly contemplated current and future deals with Endeavor when executing the Settlement Agreement, and mutually agreed that such deals will be done for the benefit of the LLC, rather than its individual members. (1CR715.)

The Southpark Project was an opportunity of the LLC, since it was: (a) a self-storage project; (b) in the Austin SMSA; (c) underwritten and developed by Endeavor; and (d) commenced before the expiration date of August 31, 2014. (1CR708, 715.) Despite the express terms of the Settlement Agreement and the clear company opportunity presented by the Southpark Project, Haskins formed Southpark SS in July 2012, and pursued the Southpark Project with Endeavor for his own personal benefit. (1CR788-90.)

As a matter of Texas law, Haskins usurped a company opportunity of the LLC, breached the Settlement Agreement, and breached his fiduciary duty to the LLC. The trial court should have granted Roemer's motion for summary judgment (as to Haskins breach of fiduciary duty related to the Southpark Project), and should not have granted Haskins a take-nothing summary judgment on breach of fiduciary duty.

## 7. Nothing in the Settlement Agreement waived or limited Haskins's fiduciary duties regarding Endeavor projects.

Haskins argued that the Settlement Agreement altered his fiduciary duties. (2CR1886-94.) For a party to waive or limit his fiduciary duties, it must be done by clear and unequivocal language. Texas courts has emphasized the importance of honoring parties' contractual terms defining the scope of their obligations and agreements, including limiting fiduciary duties that might otherwise exist. *See, e.g., Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 703 (Tex. 2007); *Strebel v. Wimberly*, 371 S.W.3d 267, 283 (Tex. App.—Houston [1st Dist.] 2012, pet.

denied).

On a plain reading, Paragraph F *is not* an express and clear waiver of fiduciary duties as to current and future Endeavor deals carved out of the "independent deals" category. Tellingly, there is no language anywhere in Paragraph F about eliminating or even limiting fiduciary duties. This is in sharp contrast to cases where waivers or limits were found.

In *Strebel*, the manager-member expressly disclaimed any fiduciary duty owed to the LLC, through a provision in a secondary agreement, which said that "the General Partner shall have no duties (including fiduciary duties) except as expressly set forth in this Agreement." *Strebel*, 371 S.W.3d at 283. This secondary agreement eliminated the fiduciary duties that the General Partner had owed under the parties' original agreement.

In *Jochec v. Clayburne*, 863 S.W.2d 516, 520 (Tex. App.—Austin 1993, writ denied), the court held that the trial court erred by refusing to recognize that a trustee's fiduciary duties had been contractually limited. The agreement provided that the defendants were permitted "to engage in and carry on any business or

undertaking … with any person, firm, corporation or trustee under any other trust." Although the court concluded the language was not specific enough to provide a clear indication of the parties' intent, evidence presented at trial established that the plaintiffs did not object to the defendants serving in a dual capacity. Therefore, the parties clearly intended this provision to serve as a limitation of the defendant's fiduciary duty.

In contrast, Roemer offered summary-judgment evidence (including multiple affidavits) that the parties did *not* contemplate a waiver of fiduciary duties relative to the carved-out Endeavor deals. (1CR693-703; 2CR1081-98; 3CR1915-23.)

The common-law fiduciary duty is the source of the duty of an LLC manager not to usurp LLC opportunities. "The so-called 'corporate opportunity' rule is but a means, judicially designed, to test the conduct of the fiduciary respecting the requirements cast on him of 'utmost good faith in his relations to the corporation he represents.'" *Imperial Group (Texas), Inc. v. Scholnick*, 709 S.W.2d 358, 363 (Tex. App.—Tyler 1986, writ ref'd n.r.e.).

The Settlement Agreement nowhere mentions, much less

abrogates, the fiduciary duties owed by Haskins to the LLC under common law. The trial court should have denied Haskins's supplemental motion for summary judgment on this issue. (2CR1886-94.)

For the same reasons, the trial court should have denied Haskins's summary-judgment argument that his "affirmative defenses" of waiver and estoppel conclusively defeated Roemer's fiduciary-duty claim. (1CR116-18, 315-17; 2CR1893.) First, those defenses are nothing but recast versions of his incorrect argument that the Settlement Agreement allows him to take Endeavor deals for himself. (1CR109-10.) Second, Haskins made no effort to conclusively prove the elements of waiver and estoppel, which was his summary-judgment burden since he claims these are "affirmative defenses." (1CR116-18, 315-17; 2CR1893.) *See, e.g.*, *Cantey Hanger LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) (defendant moving for summary judgment on affirmative defense carries the burden to establish, as a matter of law, each legal element of its defense).

## 8. The trial court did not actually enter any declarations for Haskins.

Although Haskins requested specific declarations from the trial court (1CR298), the summary-judgment orders simply granted summary judgment, without making any declarations. (3CR3046-48, 3138-40.) The Final Judgment simply incorporated the summary-judgment rulings, again without making any declarations. (SuppCR4-6.)

In the absence of declarations, the judgment is fatally flawed and cannot support Haskins's claim that the Settlement Agreement means what he claims. *See Petro Pro, Ltd. v. Upland Res. Inc.*, 279 S.W.3d 743, 747-48 (Tex. App.—Amarillo 2007, pet. denied). In *Petro Pro*, as in this case, the judgment merely granted summary judgment without declaring the parties' rights. *Id.* at 747-48 & n.2. The court of appeals complained that it "was left to speculate as to exactly what the trial court determined the rights of the parties under the assignments to be." *Id.* at 748. The court continued that "[a] properly drafted declaratory judgment should terminate the uncertainty or controversy giving rise to suit by

declaring the rights of the parties as to those matters upon which the parties joined issue." *Id.* Thus, the court ruled that "the failure of the judgment to specifically declare those rights was error." *Id.*; *see Calvert v. Employees Retirement Sys. of Tex.*, 648 S.W.2d 418, 419 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (where the trial court granted summary judgment without including declarations, the district court failed in its duty).

The *Petro Pro* court then determined that it should nevertheless declare the rights of the parties, since the issue was joined by cross-motions for summary judgment. *Petro Pro*, 279 S.W.3d at 748. This Court should do the same, but unencumbered (as in *Petro Pro*) by any speculation about what the trial court intended to declare but did not.

### 9. The Settlement Agreement contains no conditions precedent to Roemer's right to recover.

Haskins asserted that he is entitled to declarations that Roemer had to fulfill certain duties before he can recover for Endeavor projects. (1CR298.) But there is no such condition in the Settlement Agreement. The duty language that Haskins relied

on does not state that the duties are a condition precedent to participation in the monetary benefits that Haskins usurps for himself. (1CR713.) *See, e.g., Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) (condition precedent usually requires words such as "if," "provided that," or "on condition that").

Further, Paragraph C of the Settlement Agreement provides that any alleged failure to perform by the parties must be resolved internally through good-faith efforts, and by mediation if those efforts fail to resolve the dispute. (1CR713.) The parties also expressly agreed in Paragraph C that "in no event shall such dispute be used as a basis to delay or deny distribution" under the Settlement Agreement. (*Id.*) Thus, the Settlement Agreement contains no condition precedent or predicate that permits Haskins to "delay or deny distribution" regarding deals that are LLC opportunities.

And in any case, the trial court could not have properly granted summary judgment to Haskins on the basis of any condition precedent because, at minimum, Roemer raised material

questions of fact regarding his performance. (2CR1083, 1354-55; *see* pages 18-21, 36-39, above.)

## 10. Alternatively, the Settlement Agreement is ambiguous, requiring a remand for a jury trial.

A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one interpretation. *E.g., Coker v. Coker,* 391, 650 S.W.2d 391, 394 (Tex. 1983). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was created. *E.g., id.* When a contract contains an ambiguity, the granting of a motion for summary judgment is erroneous because the interpretation of the contract becomes a fact issue. *E.g., id.*

At worst, the trial court in this case was presented with an ambiguous contract, and the interpretation of the contract should have been resolved by a full trial — not by summary judgment. *See, e.g., id.; see also Arredondo v. City of Dallas,* 79 S.W.3d 657, 666-67 (Tex. App.—Dallas 2002, pet. denied) ("Patent ambiguity of a contract may be considered for the first time on appeal from

a motion for summary judgment."); *Highlands Mgmt. Co. v. First Interstate Bank*, 956 S.W.2d 749, 752 n.1 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (court can consider ambiguity whether or not raised by parties); *cf. White v. Moore*, 760 S.W.2d 242, 243 (Tex.1988) (reversing summary judgment in will-contest case due to ambiguity, where parties had agreed the will was unambiguous); *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex.1993) ("A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party.").

## CONCLUSION

Roemer requests that the Court reverse the trial court's summary judgment for Haskins, reverse the trial court's denial of Roemer's motion for summary judgment, enter the summary judgment that Roemer requested, reverse the final judgment only insofar as it is predicated on the summary-judgment orders, and remand for further proceedings on Roemer's breach-of-contract and breach-of-fiduciary-duty claims. Roemer also requests general relief.

Respectfully submitted,

**Stolley Law, P.C.**

By: _/s/ Scott P. Stolley_

Scott P. Stolley

State Bar No. 19284350
scott@appellatehub.com
4810 Purdue Ave.
Dallas, Texas 75209
Phone: (469) 235-4588

Craig A. Albert
Cherry Petersen Landry
Albert LLP
State Bar No. 00790076
calbert@cplalaw.com
8350 N. Central Expressway
Suite 1500
Dallas, Texas 75206
Phone: (214) 265-7457
Fax: (214) 265-7008

**Counsel for Appellant
Wesley Roemer**

## CERTIFICATE OF COMPLIANCE

This brief was prepared using Microsoft Word 2013 in Century font with 14-point type. This brief contains 6444 words, not counting the sections excluded by Tex. R. App. P. 9.4(i)(1).

*/s/ Scott P. Stolley*
Scott P. Stolley

## CERTIFICATE OF SERVICE

On June 4, 2018, a copy of this brief was served through efileTexas.gov on counsel for Appellee, as indicated below:

Jeffrey S. Levinger
Levinger PC
1700 Pacific Ave.
Suite 2390
Dallas, Texas 75201
jlevinger@levingerpc.com

J. Carl Cecere
Cecere PC
6035 McCommas Blvd.
Dallas, Texas 75206
ccecere@cecerepc.com

*/s/ Scott P. Stolley*
Scott P. Stolley

# Appendix A

CAUSE NO. DC-13-02661

| WESLEY ROEMER, Individually | § | IN THE DISTRICT COURT |
|---|---|---|
| and Derivatively on Behalf of | § | |
| Haskins/Roemer, L.L.C.; | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 191st JUDICIAL DISTRICT |
| | § | |
| | § | |
| EDD HASKINS | § | |
| | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

## FINAL JUDGMENT

On December 14, 2015, this case proceeded to a bench trial. Plaintiff Wesley Roemer ("Plaintiff") appeared in person and through counsel and announced ready. Defendant Edd Haskins ("Defendant") appeared in person and through counsel and announced ready.

After receiving evidence through the testimony of live witnesses and the admission of exhibits, and the parties having rested and closed, the Court is of the opinion that Plaintiff should recover from Defendant as follows:

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff Wesley Roemer shall have judgment against Defendant Edd Haskins for actual damages on the contract claims related to Chapel Colorado LLC and the Brodie management fees in the amount of $117,248.31, plus pre-judgment interest as follows:

6% per annum running from September 16, 2014 [180 days after Defendant received written notice of the claim on March 20, 2014] on the actual damage amount of

$81,248.31 [one-half of the March 7, 2014 distribution in the amount of $162,496.63] related to the sale proceeds being held by Defendant for Plaintiff's interest in Chapel Colorado LLC; AND

6% per annum running from March 5, 2013 [the date of the filing of the lawsuit] on the actual damage amount of $36,000.00 related to the Brodie management fees owed by Defendant to Plaintiff;

For total amount of pre-judgment interest in the amount of $_____.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiff Wesley Roemer shall have judgment against Defendant Edd Haskins for reasonable attorney's fees for the contract claims pursuant to Chapter 38 in the amount of $50,000 for pre-trial, trial, and post-trial and costs of court.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiff Wesley Roemer shall have judgment against Defendant Edd Haskins for post-judgment interest on the actual damages, attorney's fees and court costs, in the amount of 5% compounded annually, starting on the date of the entry of this judgment and running until the date paid.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiff shall be entitled to recover the following reasonable attorney's fees from Defendant in the event Plaintiff is successful in any appeals:

| | |
|---|---|
| For appeal to the Dallas Court of Appeals | $30,000 |
| For petition to the Texas Supreme Court | $10,000 |
| For briefing to the Texas Supreme Court | $13,000 |
| For oral argument to the Texas Supreme Court | $ 7,000 |

---

**FINAL JUDGMENT**                                                                    **Page 2**

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiff is entitled to recover post-judgment interest on the amounts of appellate attorney's fees, in the amount of 5% compounded annually from the following dates: (1) on the date an appeal is perfected, for the $30,000 in the court of appeals; and (2) on the date a petition for review is filed for the fees in the Supreme Court.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiff shall have all writs of execution and other processes necessary to enforce this judgment.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that while the Court entered two Orders on Motions for Summary Judgment on November 23, 2015 and February 16, 2016, granting Defendant's Motion for Partial Summary Judgment on Declaratory Judgment without any express declaratory relief given, the Court determines that it is not equitable and just to award to Defendant attorney's fees or costs of court against Plaintiff under the declaratory judgment claim. These two above-referenced summary judgment orders are hereby merged into this Final Judgment.

This is the Final Judgment that disposes of all claims between all parties. All other relief not expressly granted herein is denied.

SIGNED this 25th day of Oct 2017.

_____
JUDGE PRESIDING

# Appendix B

423 J
000417

CAUSE NO. DC-13-02661

| | | |
|---|---|---|
| WESLEY ROEMER, Individually | § | IN THE DISTRICT COURT |
| And Derivatively on Behalf of | § | |
| HASKINS/ROEMER, L.L.C. | § | |
| | § | |
| Plaintiffs, | § | 191st-J JUDICIAL DISTRICT |
| | § | |
| v. | § | |
| | § | |
| EDD HASKINS, | § | |
| | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Came on for hearing Defendant Edd Haskins's ("Defendant") Motion for Partial Summary Judgment and Defendant's Motion for Partial Summary Judgment on Declaratory Judgment and Breach of Contract, and Defendant's Supplemental Motion for Summary Judgment against Plaintiff Wesley Roemer, individually and derivatively on behalf of Haskins/Roemer, LLC ("Plaintiff") (collectively, "Defendant's Motions for Summary Judgment").

The Court also heard Plaintiff's Traditional Motion for Partial Summary Judgment (Chapel Colorado, LLC), Plaintiff's Traditional Motion for Partial Summary Judgment (Brodie Management Fees), and Plaintiff's Traditional Motion for Partial Summary Judgment (Endeavor Deals) against Defendant (collectively, "Plaintiff's Motions for Summary Judgment").

The Court also heard Defendants Motion for Traditional Summary Judgment and No Evidence Summary Judgment on claims Plaintiff asserted against Defendant relating to a project owned by NL Land Holdings, Ltd. (the "NL Land Holdings Summary Judgment"), as well as Defendant's Motion to Strike Plaintiff's claims relating to the project owned by NL Land Holdings, Ltd. as untimely (the "Motion to Strike").

ORDER ON MOTIONS FOR SUMMARY JUDGMENT – Page 1

The Court, having considered Defendant's Motions for Summary Judgment and the NL Land Holdings Summary Judgment, Plaintiff's Responses in Opposition to Defendant's Motions for Summary Judgment and the NL Land Holdings Summary Judgment, Defendant's Replies in Support of Defendant's Motions for Summary Judgment, Defendant's Objections to Plaintiff's Summary Judgment Evidence, the summary judgment evidence admitted for consideration, and the pleadings on file in this case, is of the opinion that Defendant's Motions for Summary Judgment and NL Land Holdings Summary Judgment should be **GRANTED** in their entirety, except as to Defendant's motion for summary judgment on Plaintiff's claim for breach of contract regarding Defendant's alleged failure to pay Plaintiff the Brodie Management Fee.

The Court, having considered Plaintiff's Motions for Summary Judgment, Defendant's Responses in Opposition to Plaintiff's Motions for Summary Judgment, Defendant's Objections and Motion to Strike Summary Judgment Evidence, Defendants Motions for Summary Judgment and the summary judgment evidence admitted for consideration, is of the opinion that Plaintiff's Motions for Summary Judgment should be **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motions for Summary Judgment and NL Land Holdings Summary Judgment are **GRANTED** in their entirety, except for Defendant's motion for summary judgment for breach of contract regarding Defendants' alleged failure to pay Plaintiff the Brodie Management Fee;

IT IS FURTHER ORDERED that Defendant's Motion to Strike Untimely Disclosures and Claim is **DENIED** as moot.

IT IS FURTHER ORDERED that Plaintiff's Motions for Summary Judgment are **DENIED** in their entirety;

IT IS FURTHER ORDERED that Plaintiff shall take nothing by his claims against Defendant, which are hereby dismissed with prejudice, except for Defendant's motion for summary judgment for Defendant's alleged breach of contract for failure to pay Plaintiff the Brodie Management Fee and Plaintiff's claim for Defendant's alleged breach of contract for failure to distribute proceeds from the sale of certain property known as Chapel Colorado.

SIGNED this 23rd day of Nov 2015.

_____
JUDGE PRESIDING

# Appendix C

CAUSE NO. DC-13-02661

| | | |
|---|---|---|
| WESLEY ROEMER, Individually | § | IN THE DISTRICT COURT |
| And Derivatively on Behalf of | § | |
| HASKINS/ROEMER, L.L.C. | § | |
| | § | |
| Plaintiffs, | § | 191ˢᵗ-J JUDICIAL DISTRICT |
| | § | |
| v. | § | |
| | § | |
| EDD HASKINS, | § | |
| | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Came on for hearing Defendant Edd Haskins's ("Defendant") Motion for Partial Summary Judgment and Defendant's Motion for Partial Summary Judgment on Declaratory Judgment and Breach of Contract, and Defendant's Supplemental Motion for Summary Judgment against Plaintiff Wesley Roemer, individually and derivatively on behalf of Haskins/Roemer, LLC ("Plaintiff") (collectively, "Defendant's Motions for Summary Judgment").

The Court also heard Plaintiff's Traditional Motion for Partial Summary Judgment (Chapel Colorado, LLC), Plaintiff's Traditional Motion for Partial Summary Judgment (Brodie Management Fees), and Plaintiff's Traditional Motion for Partial Summary Judgment (Endeavor Deals) against Defendant (collectively, "Plaintiff's Motions for Summary Judgment").

The Court also heard Defendants Motion for Traditional Summary Judgment and No Evidence Summary Judgment on claims Plaintiff asserted against Defendant relating to a project owned by NL Land Holdings, Ltd. (the "NL Land Holdings Summary Judgment"), as well as Defendant's Motion to Strike Plaintiff's claims relating to the project owned by NL Land Holdings, Ltd. as untimely (the "Motion to Strike").

The Court, having considered Defendant's Motions for Summary Judgment and the NL Land Holdings Summary Judgment, Plaintiff's Responses in Opposition to Defendant's Motions for Summary Judgment and the NL Land Holdings Summary Judgment, Defendant's Replies in Support of Defendant's Motions for Summary Judgment, Defendant's Objections to Plaintiff's Summary Judgment Evidence, the summary judgment evidence admitted for consideration, and the pleadings on file in this case, is of the opinion that Defendant's Motions for Summary Judgment and NL Land Holdings Summary Judgment should be **GRANTED** in their entirety, except as to Defendant's motion for summary judgment on Plaintiff's claim for breach of contract regarding Defendant's alleged failure to pay Plaintiff the Brodie Management Fee.

The Court, having considered Plaintiff's Motions for Summary Judgment, Defendant's Responses in Opposition to Plaintiff's Motions for Summary Judgment, Defendant's Objections and Motion to Strike Summary Judgment Evidence, Defendants Motions for Summary Judgment and the summary judgment evidence admitted for consideration, is of the opinion that Plaintiff's Motions for Summary Judgment should be **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motions for Summary Judgment and NL Land Holdings Summary Judgment are **GRANTED** in their entirety, except for Defendant's motion for summary judgment for breach of contract regarding Defendants' alleged failure to pay Plaintiff the Brodie Management Fee;

IT IS FURTHER ORDERED that Defendant's Motion to Strike Untimely Disclosures and Claim is **DENIED** as moot.

IT IS FURTHER ORDERED that Plaintiff's Motions for Summary Judgment are **DENIED** in their entirety;

IT IS FURTHER ORDERED that Plaintiff shall take nothing by his claims against Defendant, which are hereby dismissed with prejudice, except for Plaintiff's claim against Defendant for alleged breach of contract for failure to pay Plaintiff the Brodie Management Fee and Plaintiff's claim for Defendant's alleged breach of contract for failure to distribute proceeds from the sale of certain property known as Chapel Colorado.

SIGNED this 17th day of February 2016

_____
JUDGE PRESIDING

# Appendix D

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is entered into by and among the following "Parties":

## I. PARTIES

A.  Edd Haskins, individually and as Managing Member of Haskins/Roemer, LLC ("Haskins"); and

B.  Wesley Roemer, individually and as a member of Haskins/Roemer, LLC ("Roemer").

## II. RECITALS

A.  WHEREAS, Haskins and Roemer had been members of various limited liability companies.

B.  WHEREAS, Haskins/Roemer, LLC was formed in July 2008. Roemer is to identify feasible sites for the development of self-storage facilities that Endeavor, or other equity partners, will underwrite and develop ("Roemer's duties"). Haskins acts to determine whether sites Roemer identifies are capable of development, oversees the site planning, design, development, zoning and permitting process ("Haskins duties"). Under the various agreements described below, both parties are to participate in the management of various self-storage facilities (the "Management duties") (Roemer's duties, Haskins duties and the Management duties are collectively referred to herein as the "Parties' duties").

C.  WHEREAS, in December 2008, Haskins/Roemer, LLC executed the Limited Liability Operating Agreement for Pflugerville 45 Storage, L.L.C. ("Pflugerville"). Under the Pflugerville Agreement, Haskins/Roemer, LLC was to act as the Development Member of the Project, and was paid a Developer's Fee. In addition, under that agreement, Haskins/Roemer was to act as the Owner/Builder Member of the project, and was paid a Builder's Fee. In connection with the Pflugerville Agreement, Haskins/Roemer is also to act as the Self-Storage Management Company after the project was completed, and is being paid a Management Fee.

D.  WHEREAS on April 9, 2009, Haskins formed Chapel Colorado, LLC. Haskins is the sole member of Chapel Colorado, LLC.

E.  WHEREAS, in 2011, Haskins/Roemer, LLC executed the Limited Liability Operating Agreement for Brodie MS, L.P. ("Brodie"). Under the Brodie Agreement, Haskins/Roemer, LLC is to act as the Development Member of the Project, and will be paid a Developer's Fee, a Builder's Fee and a Management Fee.

F.  WHEREAS, in connection with Haskins/Roemer, LLC's obligations under the Pflugerville Agreement and the Brodie Ageement, Haskins/Roemer, LLC engaged Haskins to act as the jobsite superintendent. Haskins has acted as the jobsite

HAS022153

superintendent for Haskins/Roemer, LLC in connection with the Pflugerville development and the Brodie Development. In connection with this duty, Haskins has been paid or will be paid a jobsite superintendent fee.

G.  WHEREAS, disputes arose between Haskins and Roemer regarding each Parties ownership interest in Haskins/Roemer, LLC, as well as the Parties' Duties and their respective contribution to various development projects and the percentage of compensation that each party is entitled to receive in connection with past, current and future development projects, as well as Haskins role as on-site superintendent for the Pflugerville, Brodie and future projects, and issues related to disproportionate draws (the "Disputes").

H.  WHEREAS, Haskins/Roemer, LLC is presently engaged in development deals with Endeavor Real Estate Group ("Endeavor") and Haskins/Roemer, LLC wishes to continue to do business or attempt to do business with Endeavor and the parties believe they may more successfully deal with Endeavor as Haskins/Roemer, LLC rather than as Haskins or Roemer in their individual capacity.

I.  WHEREAS, the Parties to this Agreement desire to and have agreed to settle and resolve all controversies of every sort in dispute between them relating to the Disputes, as well as to memorialize their agreements regarding their respective interests in Haskins/Roemer, LLC, any other entity that the Parties may collectively form in connection with providing services for Endeavor, and the Parties' Duties.

J.  NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises and covenants herein set forth and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all Parties to this Agreement, it is agreed as follows:

## III. AGREEMENTS

A.  **Pflugerville**. With regard to the Development Fee, the Builder Fee, and the Management Fee that was or is to be paid to Haskins/Roemer, LLC under the Pflugerville Agreement, the Parties agree to divide and distribute these fees as follows:

|    | Fee | Haskins | Roemer |
|----|-----|---------|--------|
| 1. | Development Fee | 50% | 50% |
| 2. | Builder Fee | 50% | 50% |
| 3. | Management Fee | 50% | 50% |
| 4. | Jobsite Superintendent Fee | 100% | 0% |

Upon execution of the final Settlement Agreement, Haskins agrees to distribute to Roemer any unpaid portion of the previously undistributed $45,000.00 to compensate Roemer for any and all past monies owed to Roemer under the Pflugerville Agreement for work performed and/or monies received through August 15, 2011 and for any claims that Haskins has received a greater amount in draws in connection with Pflugerville or any other project that preceded Pflugerville.

SETTLEMENT AGREEMENT                                                      Page 2

HAS022154

**B.**  **Brodie and Future Endeavor Deals.**  As consideration for the Parties' Duties, the Parties agree that on Brodie and all future Endeavor projects into which Haskins/Roemer, LLC enters into a Development Agreement, Haskins and Roemer agree to split the Development Fee, the Builder Fee, the Jobsite Superintendent Fee, and the Management Fee as follows:

| | Fee | Haskins | Roemer |
|---|---|---|---|
| 1. | Development Fee | 50% | 50% |
| 2. | Builder Fee | 70% | 30% |
| 3. | Management Fee | 50% | 50% |
| 4. | Jobsite Superintendent Fee | 100% | 0% |

As consideration for the Parties' agreement that each Party will each receive a percentage of the Development Fee, the Builder Fee and Management Fee, for each project, each party agrees to perform the respective Party's Duties and proportionate share of all duties that Haskins/Roemer, LLC is obligated to perform in connection with the Development Fee, Builder Fee, and Management Fee.

Any and all reasonable and necessary expenses incurred by either Haskins or Roemer in fulfilling the obligations of Haskins/Roemer, LLC as the Development Member of the project shall be charged against and accounted for in relation to the respective fee prior to distribution. By way of example, in Pfiugerville the Development Fee was paid upon obtaining a construction loan. Therefore, all expenses incurred by Haskins/Roemer, LLC in obtaining the construction loan such as feasibility studies, obtaining entitlements, etc. shall be expensed against the Development Fee prior to distribution. The Builder Fee is paid to Haskins/Roemer, LLC for its role as the Owner/Building Member of the project. It is the equivalent of a general contractor position. All expenses related to its role as a general contractor shall be expensed from the Builder Fee prior to distribution; similarly, the normal and customary expenses of a jobsite superintendent operating under a general contractor shall be expensed against the jobsite superintendent fee. Finally, all expenses related to the post-construction management would be charged against the Management Fee.

The Parties agree that any brokerage fee that Haskin/Roemer, LLC is to receive under any Endeavor development agreement, including under the Brodie Agreement, will be evenly split between Haskins and Roemer.

**C.**  **Management Fee.**  As consideration for the Parties' agreement that each Party will each receive 50% of the Management Fee, each Party agrees to handle 50% of all "Manager Duties" that Haskins/Roemer, LLC is obligated to perform in connection with any Property Management Agreement between Haskins/Roemer, LLC and Endeavor. If there is a dispute between the Parties as to whether the other Party is performing his required duties and the Parties are not able in good faith to resolve the dispute, they will submit the dispute to mediation, but in no event shall such dispute be used as a basis to delay or deny distribution in accordance with paragraph D. The Parties acknowledge that as these

HAS022155

projects mature, their on-site Management Duties may decrease and the Parties may mutually agree to amend this paragraph in the manner set forth herein below.

D.    **Haskins/Roemer, LLC Bank Account.**  The Parties agree that Roemer will have complete access to all past, present and future business records and bank accounts maintained by or for Haskins/Roemer, LLC., Roemer/Haskins, LLC, Chapel Colorado, LLC or any other entity in which the Parties have been involved.  To facilitate this access, Haskins shall provide the name and account number of all financial institution accounts and shall provide written authority for access and copying by Roemer. Haskins, however, will have sole authority to write checks out of the Haskins/Roemer, LLC account for amounts due to third parties in furtherance of any Development Agreement or Property Management Agreement entered into between Haskins/Roemer, LLC and Endeavor and/or for purposes of writing checks to the Distribution Accounts. Haskins shall not have authority to write checks out of the Haskins/Roemer, LLC account payable directly or indirectly to himself or on his behalf.  To the contrary, all monies paid to either Party must be paid solely from the Distribution Account.

Within ten (10) days of the execution of this Settlement Agreement, Haskins shall open a Haskins/Roemer, LLC distribution account, which shall be separate from the Haskins/Roemer, LLC account (the "Distribution Account").

With regard to the distribution, the Parties agree as follows:
(1)    Within one week of receipt, 100% of any Developer's Fee shall be distributed to the Parties;
(2)    Within one week of receipt, 50% of any Builder's Fee shall be distributed to the Parties until retainage is paid, and then the remaining balance shall be distributed according to the schedule outlined in the agreement with Endeavor.  Both Parties will receive the AIA draw form each month, which will fully disclose what has been paid, and what is to be paid;
(3)    Within one week of receipt, 100% of any management fee will be distributed to the Parties pursuant to the terms of this Agreement.

E.    **Chapel Colorado, LLC.**  Haskins owns 100% of Chapel Colorado, LLC and agrees to transfer 50% of his interest in Chapel Colorado, LLC to Roemer.  Within thirty (30) days of the execution of the final Settlement Agreement, Roemer shall provide Haskins with documents sufficient to transfer 50% of Haskins' interest in Chapel Colorado, LLC to Roemer.  Any documents Roemer provides in connection with the transfer of 50% of Haskins' interest in Chapel Colorado, LLC shall contain an indemnity agreement whereby Roemer agrees to indemnify Haskins for any costs and fees that Haskins incurs in connection with any dispute between Roemer and his ex-wife relating to the Colorado Springs/ Chapel Colorado, LLC.  Following such transfer, Roemer and Haskins shall each be an owner of one-half (1/2th) of Chapel Colorado, LLC, each shall be entitled to 50% of any future distribution and each shall be a co-managing member.

HAS022156

F.    **Independent Deals.** With the exception of Pflugerville, Brodie, Chapel Colorado and any current or future Endeavor deals, Haskins/Roemer, LLC shall not pursue any future deals. Roemer and Haskins are free to pursue deals either independently or with other entities. Notwithstanding the existence of Haskins/Roemer, LLC, the Haskins/Roemer, LLC Operating Agreement, or this Settlement Agreement, either Haskins or Roemer may engage in whatever activities they choose, whether the same may be competitive with Haskins/Roemer, LLC or otherwise without having or incurring any obligation to offer any interest in such activities to Haskins/Roemer, LLC or any other member. Nothing in this Settlement Agreement or the Haskins/Roemer Operating Agreement shall prevent the members from engaging in such activities, or require any member to permit Haskins/Roemer, LLC or any other member to participate in any such activities, and as a material part of each Parties' consideration under this Settlement Agreement, each Party hereby waives any such right or claim of participation.

Notwithstanding the foregoing, the Parties agree to give Endeavor the right of first refusal on all self-storage deals in either the Austin or DFW SMSA. This requirement will expire on August 31, 2014 or one year after the issuance of a CO for any Endeavor-Haskins/Roemer, LLC self-storage project commenced before August 31, 2014, whichever comes later. Each party must be copied on all correspondence, offer or presentation of any deal made to Endeavor. If Endeavor declines to pursue such deal, within fourteen (14) days after same is presented to Endeavor either party shall be free to take any such deal to third-parties with no obligation to Haskins/Roemer, LLC or the other Party. If, however, Endeavor has indicated an interest in pursuing the deal, the Parties agree that they will not take the deal to any third-party so long as Endeavor continues to actively pursue such deal.

G.    **Brokerage Fees on Endeavor Deals.** Any brokerage fee paid to Haskins/Roemer for any Endeavor deal that is not contained in a development deal will be split as follows: 70% to Roemer and 30% to Haskins.

H.    **Equity on all Endeavor Deals.** The Parties agree that all any equity interest that Haskins/Roemer, LLC receives under any development agreement with Endeavor will be evenly split between Haskins and Roemer.

I.    **Access to information.** Haskins will provide Roemer an accounting of all fees paid or to be paid to Haskins/Roemer, LLC in connection with Pflugerville, Brodie and any Endeavor project. On all current and future deals or projects in which Haskins and Roemer both have a direct or indirect interest, Haskins agrees to provide Roemer access to all records of accounting of costs, expenses, income and distributions as requested. Roemer agrees to provide Haskins with full access to information upon request, including but not limited to access to all feasibility studies performed by Roemer, all rent comps, street atlas, proformas spreadsheet equations, reports, and raw data. Haskins agrees to provide Roemer with full access to information upon request including, but not limited to, all entitlement studies, costs projections, budgets, construction schedules, contractors contracts and other relevant data.

HAS022157

J. **Amendment to the Haskins/Roemer, LLC Operating Agreement.** Within thirty (30) days from the execution of the final Settlement Agreement, the Parties agree to amend the Haskins/Roemer, LLC Operating Agreement to include and incorporate the terms and agreements described herein, and to reflect that Roemer as a manager/member with 50% ownership.

K. **Mutual Release.** Haskins and Roemer hereby release and discharge each other from any and all claims, demands, actions, suits, and causes of action, known or unknown, fixed or contingent, liquidated or unliquidated, which each may have against the other.

L. **Authority and Competence.** The Parties represent and warrant that each respective Party and their respective representatives:
(a)    are legally competent to enter into this Agreement; and
(b)    possess the authority to enter into this Agreement.

M. **Ownership of Claims.** The Parties represent that they are the sole owners of the claims being released pursuant to this Agreement and that they have not transferred the claims to any third party. The Parties acknowledge that each is relying on the others representation of ownership in entering into this Agreement.

N. **Understanding of Agreement.** The Parties represent that they have read this Agreement prior to its execution and have discussed it with their respective counsel and fully understand it. The Parties also represent that no party has made any representation, other than as expressly set forth herein, regarding this Agreement. The Parties also understand that this is a full, final and complete release of all of their past and/or present claims against one another.

O. **No Admissions.** The Parties to this Agreement acknowledge that this Agreement is entered into for the sole purpose of settling vigorously contested claims. No agreement, statement, representation, and/or warranty contained in this Agreement is intended to be or should be construed as an admission of fault or liability by any party.

P. **Entire Agreement Between the Parties.** The Parties hereto agree that this Agreement and the attached exhibits contain the entire agreement between the Parties and supersede any and all prior agreements, arrangements or understandings between the Parties relating to the subject matter hereof. No oral understandings, statements or promises contrary to the terms of this Agreement exist. This Agreement may be amended, supplemented, or modified only by written instrument signed by the Parties.

Q. **Construction.** This Agreement shall be construed without regard to which Party drafted it, and it shall be interpreted as if all Parties participated equally in drafting the Agreement.

R. **Severability.** The unenforceability or invalidity, as determined by a court of competent jurisdiction, of any provision of this Agreement shall not render unenforceable or invalid any other provision of this Agreement, and the remaining provisions of this Agreement

HAS022158

716

shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as part of this Agreement, a provision as similar to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

S. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. This Agreement is made and is to be performed in the City of Dallas, Dallas County, Texas, and the courts of Dallas County, Texas shall have sole and exclusive venue and jurisdiction over any disputes concerning this Agreement.

T. **Dispute Resolution.** The Parties agree that before filing suit over a dispute involving this Agreement, they will attempt to resolve the dispute by telephone conference or face-to-face conference between representatives of the Parties who have authority to settle such dispute.

U. **Counterparts.** This Agreement may be executed in multiple counterparts, identically worded, and each such counterpart shall constitute a single agreement of the Parties.

V. **Headings.** The headings and titles are inserted only for convenience and shall not be deemed part of the Agreement or taken into consideration in the interpretation or construction of this Agreement.

_____
Edd Haskins, individually and as
Managing Member of Haskins/Roemer, LLC

_____
Wesley Roemer, individually and
as a member of Haskins/Roemer,
LLC


_____
Michael J. Lang on behalf of
Edd Haskins, individually and as
Managing Member of Haskins/Roemer, LLC

_____
Roger Albright on behalf of
Wesley Roemer, individually and
as a member of Haskins/Roemer,
LLC

HAS022159

shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as part of this Agreement, a provision as similar to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

S. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. This Agreement is made and is to be performed in the City of Dallas, Dallas County, Texas, and the courts of Dallas County, Texas shall have sole and exclusive venue and jurisdiction over any disputes concerning this Agreement.

T. **Dispute Resolution.** The Parties agree that before filing suit over a dispute involving this Agreement, they will attempt to resolve the dispute by telephone conference or face-to-face conference between representatives of the Parties who have authority to settle such dispute.

U. **Counterparts.** This Agreement may be executed in multiple counterparts, identically worded, and each such counterpart shall constitute a single agreement of the Parties.

V. **Headings.** The headings and titles are inserted only for convenience and shall not be deemed part of the Agreement or taken into consideration in the interpretation or construction of this Agreement.


---

Edd Haskins, individually and as
Managing Member of Haskins/Roemer, LLC

Wesley Roemer, individually and
as a member of Haskins/Roemer,
LLC


---

Michael J. Lang on behalf of
Edd Haskins, individually and as
Managing Member of Haskins/Roemer, LLC

Roger Albright on behalf of
Wesley Roemer, individually and
as a member of Haskins/Roemer,
LLC

HAS022160